GEORGE P. STEVENS *v.* MORRIS NURENBURG.

(97 A2d 250)

February Term, 1953.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY and CUSHING, JJ., and HUGHES, Supr. J.

Opinion Filed May 5, 1953.

*Arthur L. Graves* for the defendant.

*Richardson & Caldbeck* and *Witters, Longmoore & Akley* for the plaintiff.

SHERBURNE, C. J.   This is an action of tort to recover for personal injuries received in an automobile collision, and comes here upon the defendant's exceptions after a verdict and judgment for the plaintiff.

The undisputed evidence shows that the accident happened shortly after 8 A. M. on January 30, 1952, on the East Lyndon or Red Village Road, so-called, extending from its junction with U. S. Route 5 in the village of Lyndon in a southeasterly direction toward East Lyndon.   In the vicinity of the accident the road was about 30 feet wide between the snow banks on either side made by plowing and comparatively straight in each direction.   The weather was clear

and the temperature was about 20 degrees below zero. The plantiff was riding in a 1946 Chevrolet sedan owned and operated by one Melvin Davis, his neighbor and a man 80 years old, in a northerly direction toward Lyndon at a speed of about 20 miles per hour, and one Wilbur D. Beer as the servant of the defendant was driving a Chevrolet wrecker in a southerly direction at a speed of about 30 miles per hour. As they approached the scene of the accident and came within 200 to 300 feet of each other both vehicles were on the westerly side of the road, the defendant's wrecker being on its right side while the Davis car was on its left side. When each vehicle was a little more than 50 feet from the point of collision and the westerly wheels of each were 8 feet from the westerly edge of the plowed surface both drivers at approximately the same time turned toward the easterly side of the road, Davis turning to his right and Beer to his left, and the two vehicles collided head-on cornerwise at or near the center of the road. The wrecker was under 8 feet wide.

At the close of all the evidence the defendant moved for a directed verdict upon four grounds, and excepted to its denial upon each ground. We will first discuss the second ground, which was; "That upon all the evidence, viewed in the light most favorable to the plaintiff, the driver of the automobile in which the plaintiff was riding, which driver had put himself at the disposal of the plaintiff and also his car, which means that the car and driver were subject to the control of the plaintiff, for the purposes of this trip, was negligent as a matter of law, and that the negligence of Davis is imputable to the plaintiff." So viewed, the evidence shows that plaintiff's water pipe had frozen, and he went over to the Davis house to get some "gas" for his blow-torch, and Davis offered to take him to the village to get some, and that that was how he happened to be riding with him that morning. A little before the collision the plaintiff bent down to check the heater and pulled the fan back to see if it was on, and found that the heater was working, and he was so bent over when the collision occurred. The only other evidence bearing upon this ground of the motion was brought out in defendant's cross-examination of Davis, and was to the effect that the plaintiff asked Davis to take him to the village, that that was the only purpose of the trip, and that he drove his car for the plaintiff's benefit. The defendant contends that Davis in the operation of the car for the plaintiff's benefit was acting as the plaintiff's agent and servant, and that the plaintiff aided and took part in the management

of the car by undertaking to check the heater, and that consequently the negligence of Davis is imputable to the plaintiff.

■ The test to determine whether the owner while driving his own automobile is acting as a proprietor or as the servant of another is whether he is in control so that he can at any time stop or continue and determine the way in which it shall be driven or used, not merely with reference to the result to be reached, but with the method of reaching that result even as to its small particulars. The vital inquiry concerns the right to control. If that rests in the owner, he is acting as proprietor. If that rests with another person, then he is the servant of that other person, who becomes responsible for the conduct of the owner. *Reardon* v. *Coleman Bros. Inc.,* 277 Mass 319, 178 NE 638. As stated in *Foley* v. *Hurley,* 288 Mass 354, 193 NE 2, a case cited by the defendant and which cites the above case, "The test of the relationship of principal and agent is the right to control and not the actual exercise of control by the principal." To constitute the relation of master and servant, the one for whom the service is rendered must consent to receive the services as master, that is, consent to their being performed under his direction and control. There must be submission by the one giving service to the directions and control of the one receiving it as to the manner of performance. *Oleksinski* v. *Filip,* 129 Conn 701, 30 A2d 912; Rest. Agency § 221, Comment c. If both parties understand that the rendition of the service is merely a courtesy extended by one to the other, without intent to create the relationship of master and servant, then the relationship does not exist. *Oleksinski* v. *Filip, supra.* In this case the driver of a car owned by a third party came to the defendant's farm on an errand, and while he was there the defendant remarked that he wanted to go to a certain town to hire some help. Thereupon the driver offered to drive him there and bring him back, and the defendant accepted the offer. On their way back the accident occurred. It was held that the trial court reasonably could have concluded that the defendant did not have the right of control essential to render him liable as master.

■■ The negligence of the driver of an automobile for hire is not attributable to a passenger having no control over the driver further than to indicate the route to be followed or the place to which the car is to be driven. 5 Am Jur, Automobiles. § 495. Our case of *Bancroft's Admr.* v. *Cote,* 90 Vt 358, 361, 98 A 915, 916, is cited in an annotation in 90 ALR at page 634 in support of this universally

conceded rule. We there said: "The proposition that the deceased was a passenger for hire fairly implied that he was not in control of the car and was not engaged in a joint enterprise which included the driver." When one hires a taxi to take him to a certain place and back its operator drives it for his benefit. Had Davis been hired to carry the plaintiff to the village the mere fact that the plaintiff, after riding on the front seat with him about a mile in a car taken out of a cold garage on a very cold morning, leaned forward to see if the heater was working, would not warrant any inference that he was in control of the car or driver. On the evidence the absence of compensation makes no difference. Even if the plaintiff asked Davis to carry him to the village as testified to by Davis, rather than Davis offering to carry him without being asked, as testified by the plaintiff, makes no difference. A person riding in an automobile with the knowledge and consent of the owner is no less a guest because he has asked for the privilege of doing so. *Robinson* v. *Leonard,* 100 Vt 1, 9, 10, 134 A 706; *Higgins, Admr.* v. *Metzger,* 101 Vt 285, 290, 143 A.394.

On the undisputed evidence there was no submission by Davis to the direction and control of the plaintiff as to the manner of driving the car. The right to its control always rested in Davis. The plaintiff was a guest passenger. Consequently the negligence of Davis could not be imputed to him. *Wentworth* v. *Waterbury,* 90 Vt 60, 62, 96 A 334; *Lee* v. *Donnelly,* 95 Vt 121, 128, 113 A 542; *Lefebvre's Admr.* v. *Central Vt. Ry. Co.,* 97 Vt 342, 349, 123 A 211. The exception to the denial of the motion for a directed verdict on this ground is not sustained.

For like reasons the exceptions to the court's charge that the plaintiff was a guest and as such not chargeable with the negligence of Davis, and that he was merely a passenger having no control over the management of the vehicle, the exception to the failure of the court to submit to the jury the question of whether or not there was an agency between the plaintiff and Davis, the exception to the denial of defendant's request to charge to the effect that if the jury found that Davis was the agent or servant of the plaintiff his negligence will be imputed to the plaintiff, and the exception to the denial of the request to charge in effect that if the jury find that the plaintiff requested Davis to drive him to Lyndon, and Davis at the plaintiff's request placed himself and automobile at the disposal of the plain-

tiff so that the plaintiff had the right to control, then Davis was his agent, are overruled.

The first ground of defendant's motion for a directed verdict was that there was no substantial evidence that the plaintiff was free from contributory negligence. Viewed most favorably to the plaintiff the evidence tended to show the following facts in addition to the facts which we have stated were undisputed : The plaintiff was 25 years old and had driven an automobile for 9 years. He had ridden with Davis on numerous occasions and had observed that he was "careful and easy driving." Davis had good distance sight without glasses and was not wearing them. When the plaintiff and Davis got into the car in the garage the windows were fairly clear. On the road the windshield became "fogged up" some just before the collision, although the defroster was working, but Davis "could see through it all nice" and could see ahead. Shortly before the accident Davis had gotten over on to his left side of the road, but he didn't realize that he had done so until he saw the wrecker 200 to 250 feet away. He then turned to his right as soon as he could. As previously stated the plaintiff bent down to check the heater a little before the collision and was so bent over when the collision occurred. He never saw the wrecker. On the other hand, the defendant introduced evidence tending to show that just before the accident the Davis windshield was all frosted up except for a small space just over the defroster on the driver's side, that Davis seemed to be leaning to look through this space, and that about 25 minutes after the accident the windshield was observed to be quite badly frosted up, with the frost starting approximately three inches above the top of the dashboard.

Our law applicable to this phase of the case is summed up in *Huestis, Admr.* v. *Lapham Estate,* 113 Vt 191, 195, 196, 32 A 115. That case supports the following propositions : Although the burden of proving freedom from contributory negligence was on the plaintiff, direct and affirmative evidence of due care on his part was not required. It was enough to carry the question to the jury to give evidence of such facts and circumstances as warranted an inference of due care on his part. A guest passenger in an automobile must take reasonable precautions for his own protection. He must act as a prudent man would act in the same situation. But he is not held to the same degree of watchfulness as is the driver, nor is he bound to anticipate that the driver will omit the exercise of proper

care. He is not excused from all responsibility, but he may rely upon the driver's watchfulness, more or less according to circumstances, without forfeiting his right of recovery. For him to entirely neglect to look out for danger or to observe the manner in which the vehicle is being operated might be the conduct of a prudent man. It cannot be said that in every case and all the time he must be alert and look to discover danger, or that his failure to do so would be a failure to exercise due care. But while this is so, the law fixes no different standard for him than for the driver. Each is bound to use due care. What conduct on his part is necessary to comply with this duty must depend upon all the circumstances, one of which is that he is merely a passenger having no control over the management of the vehicle in which he is being transported. Whether reasonable care has been exercised by the passenger is ordinarily for the jury.

It is a matter of common knowledge that on a very cold day frost will accumulate on the windows and windshield of a cold automobile when it is driven out on the highway, and that for a time, until the heater warms up sufficiently, the defroster will only keep a small area over it on the windshield clear. In our discussion of this phase of the case we will assume, as the plaintiff testified, that the windshield of the Davis car was fairly clear in the garage before they started out, and, as defendant's evidence tended to show, that by the time they had traveled about a mile to the place of the accident the windshield was all frosted up except for a clear space about three inches wide over the defroster on the driver's side, and that Davis was leaning forward to look through this space. The plaintiff had ridden with Davis numerous times and had noticed that he was a careful driver. They were traveling only 20 miles per hour over a fairly straight and wide road with which they were both familiar. With the windshield frosted up as indicated and the probability that the side windows were also, it is evident that the plaintiff relied entirely upon Davis.

A somewhat analogous situation is presented in *Richard* v. *Main Central R. Co.*, and *Sylvester* v. *Main Central R. Co.*, 132 Me 197, 168 A 811, 812. There two girls were riding as passengers on the front seat of an automobile on a very foggy night, and were injured when the automobile collided with a freight train standing on a crossing. As they approached the crossing the driver reduced his speed and proceeded very slowly. The windshield in front of the

passengers was covered with mist. The wiper in front of the driver was working, but in order to see better he had lowered the window on his side and was leaning out to see better. No one of the occupants saw or heard anything to indicate that the road was blocked, until a collision took place with a box car of the train. After referring to the burden on the plaintiffs to establish their own due care as passengers, the opinion states: "In this instance the vision of the girls was obscured. They were, however, proceeding at a moderate rate of speed, and they knew that the driver was peering out beyond the side of the car in an attempt to better discover objects ahead of him. Though passing through a fog which obscured vision, it was not as a matter of law their duty to get out and walk. The question is whether they failed to take reasonable precautions under the conditions.* * * * This was for the jury."

In the instant case, on the assumption made as to facts, Davis was driving at a moderate speed and had a clear area in his windshield three inches high over the defroster which he was looking through by leaning forward. According to his testimony he saw the wrecker when 200 to 250 feet away. If he could see that distance through this clear area there was no reason why he could not have seen enough to keep on his side of the road or could not have seen the wrecker when farther away, had he been looking. The plaintiff had observed that he was a careful driver. We think that there was sufficient evidence to take the question of due care on the part of the plaintiff to the jury. This ground of the exception to the denial of defendant's motion is not sustained.

The third ground of the motion for a directed verdict as briefed was that there was no evidence of negligence on the part of defendant's servant Beer. With the exception to the denial of the motion on this ground is briefed the exception to the denial of defendant's request to charge the jury that the defendant's driver as a matter of law was not negligent. According to Beer's testimony he had noticed the Davis car approaching in the distance, and as it came closer he saw, when it was 200 to 300 feet away, that it was "strictly" on his side of the road, and he decided that it would pull over on its own side eventually, and when it didn't but kept pulling farther to his side of the road and the two cars were about 100 feet apart he turned to the left to avoid a collision, and at the same time the Davis car turned to its right, and he then noticed that the Davis windshield

was completely blurred and that Davis was peering through a small hole trying to see. Although Beer had no recollection of applying his brakes, and the surface of the road gave no indication that he did, he thought he applied them when he saw the Davis car turning to its right into him, because it would have been the natural thing for him to do. On the whole we have here a situation where two cars are approaching each other at a combined speed of 50 miles per hour while for a distance of 200 to 300 feet wholly on the westerly or Beer's right hand side of a highway 30 feet wide, but at no time were the westerly wheels of either car nearer than 8 feet to the westerly edge of the plowed surface of the highway. At this speed the two cars were approximately 3 to 4 seconds from colliding when 200 to 300 feet apart. Yet both cars proceeded toward each other at un-reduced speed until about 100 feet or 1½ seconds apart before trying to avoid each other.

When Beer saw the Davis car wholly on his side of the road when 200 to 300 feet away, or very soon thereafter, the jury could find that he was confronted with a sudden peril through no fault of his own. When one is confronted with a sudden peril through no fault of his own he is not held to the exercise of the same degree of care as when he has time for reflection, for the law recognizes that a prudent man so brought face to face with an unexpected danger may fail to use the best judgment, may omit some precaution he could have taken or may not choose the best available method of meeting the dangers of the situation. *Hatch* v. *Daniels,* 96 Vt 89, 94, 95, 117 A 105; *Bennett* v. *Robertson,* 107 Vt 202, 214, 177 A 625, 98 ALR 152; *French* v. *Nelson,* 111 Vt 386, 391, 17 A2d 323; *Frenier* v. *Brown,* 116 Vt 538, 543, 80 A2d 524. Under such circum-stances he is not negligent if he does what a prudent man would or might have done. *Hatch* v. *Daniels, supra; Menard* v. *Blanchard,* 117 Vt 384, 390, 92 A2d 616.

The plaintiff suggests that Beer could have slowed down, pulled over to his right hand side of the road and passed the Davis car even if it had not turned to its right, and that the course of action, even if it meant driving a portion of the wrecker in and along the banked snow, would have worked no injury to any one. In view of the evidence that the wrecker was under 8 feet wide, this alternative made a jury question whether Beer did what a prudent man would or might have done in the same circumstances, and we cannot say

that there was no evidence of negligence on Beer's part or that as a matter of law he was not negligent. These exceptions are not sustained.

When this suit was commenced Davis was joined as a party defendant. Before the trial he paid the plaintiff $3250.00, and the plaintiff executed and delivered to him a covenant not to sue and discontinued the suit as to him. Whereupon this defendant filed an answer alleging that in consideration of $3250.00 the plaintiff released and discharged both defendants. Before the jury was impaneled the plaintiff brought up the subject of the covenant not to sue with a view of how to handle.it at the trial, but no action was then taken. Before the plaintiff rested his case he called one of Davis' attorneys as a witness, who testified as follows:

"Q. And acting for Mr. Davis, did you make some settlement with Mr. Caldbeck acting for Mr. Stevens, relating to the liability, if any, of Mr. Davis?

"A. Yes.

"Q. And what was that settlement?

"A. As I remember Mr. Davis made a payment of $3250.00 as his contribution to the injuries.

"Q. And in exchange for that payment did you receive some written instrument?

"A. I did."

The covenant not to sue was then identified by the witness as the written instrument referred to, and was received in evidence over the defendant's objection and exception. Because this defendant was not a party to the instrument he claimed that because the above evidence showed a settlement the instrument was not admissible to show something else.

Somewhat similar questions were saved in the exception to the denial of the fourth ground of the motion for a directed verdict, that on the undisputed evidence there was a settlement of Davis' liability, which was a bar to the plaintiff against this defendant, and in the exception to the denial of defendant's request to charge, that if the jury found the payment of $3250.00 received by the plaintiff was intended as a settlement of the liability, if any, of Davis, such settlement was a bar to the plaintiff's cause of action, and its verdict

should be for the defendant. We will discuss these exceptions together.

No claim is made that the covenant not to sue as written discharged the defendant. The sole question is whether the quoted testimony shows that the payment received from Davis was made and accepted in full satisfaction of the plaintiff's injuries. The defendant insists that if the transaction was what the witness said it was it was a settlement of the "liability of Mr. Davis." This interpretation distorts the meaning of the testimony. By the first quoted question and answer the witness says that he made a settlement "relating to the liability, if any, of Mr. Davis." Then in the answer to the next question as to what the settlement was, he says that Mr. Davis made a payment of $3250.00 "as his contribution" to the injuries. Then he testified that he received the covenant not to sue in exchange for that payment. As we interpret this testimony it is entirely consistent with the mere receiving of the covenant not to sue in exchange for the sum of money. It shows that the payment was made as a contribution to the plaintiff's injuries. In other words, it was only a partial payment. We think that the receipt of the covenant not to sue in exchange for the $3250.00 was a settlement relative to the liability of Davis. The word "settlement" is similarly used in *Johnson* v. *Von Scholley,* 218 Mass 454, 106 NE 17, a case cited by the defendant. There certain evidence was wrongly excluded. The plaintiff wrote his counsel authorizing a settlement with one joint tort feasor upon condition that his rights be reserved against the defendants. The opinion states: "The jury should have been permitted to determine on all the evidence whether the covenant not to sue embodied the settlement the plaintiff had authorized, and which had been actually effected. If they found that it did, the defendants had not been discharged. But if, notwithstanding the covenant not to sue, the defendants on whom rested the burden of proof had shown that the plaintiff in fact had compromised his claim without qualification, the action could not be maintained." The quoted testimony does not show that the payment was accepted in full satisfaction of the plaintiff's injuries. This group of exceptions is overruled.

After Davis had testified on cross-examination by the defendant that the plaintiff had asked him to take him to Lyndon where he could get some gas for his blow-torch, that he agreed to do so,

and that was the only purpose of his trip, he was asked: "And you put yourself and your car at his disposal for that purpose, didn't you?" The question was objected to and excluded and the defendant excepted. The defendant says that if Davis put himself and car at the plaintiff's disposal for the purpose of the trip, then the plaintiff had the right to direct as to the route and the way and manner in which Davis drove and operated his automobile. This indicates that he wanted to show by Davis that he was the agent or servant of the plaintiff on this trip. Davis was a competent witness to testify to facts on the question as to whether he was an agent or servant, but not to opinions and conclusions. *Dieter* v. *Scott,* 110 Vt 376, 382, 9 A2d 95. The question called for a conclusion and was properly excluded. The question was also faulty because it made an assertion. *State* v. *Teitle,* 117 Vt 190, 196, 90 A2d 562.

The defendant excepted to the denial of several more requests to charge. As we shall point out each was in part unsound and for that reason it was not error to deny them. *Nelson* v. *Traveler's Ins. Co.,* 113 Vt 86, 99, 30 A2d 75; *Brown* v. *Gallipeau,* 116 Vt 290, 295, 75 A2d 694. As to some of these requests this rule applies: It is not error to refuse to grant a request to charge in the terms made unless it sets forth sound law to the full extent. The fact that some sound law might be extracted from a request or that, in general terms, it may be sound law with certain qualifications is not enough. *Vaughan* v. *Porter,* 16 Vt 266; *Packard* v. *Quesnel,* 112 Vt 175, 176, 180, 22 A2d 164.

One request was to the effect that if one without his own fault is confronted with an emergency, "he is not necessarily negligent" if in attempting to escape the danger he makes a mistake in the method adopted. To say that "he is not necessarily negligent," without the qualification that the mistake must be such a one as a prudent man in the same circumstances would or might make, gives the jury no guide to go by.

Another request was in part: "If the defendant's driver without fault on his part was driving at a reasonable rate of speed on his own side of the road, he is not chargeable with negligence, if in attempting to escape the danger he made a mistake." This request is faulty because it omits the qualification above referred to.

Another request was: "It was not necessarily negligence for the driver of the defendant's vehicle to turn to the left on meeting a car

coming from the opposite direction in an attempt to avoid such car on the wrong side of the road when a collision was threatened." To say that "it was not necessarily negligence," without the qualification that such action must be such as a prudent man in the same circumstances would or might take, gives the jury no guide to go by.

Another request ends: "in judging the care and prudence of the defendant's driver, Mr. Beer, you need only consider what he did or failed to do after it became evident to him that a collision was probable." A fault with this request is that it left to Beer the sole determination of when a collision was probable. If it should have become evident to him earlier than it did that a collision was probable, what he did or failed to do thereafter was for consideration. The prudent man rules applies to this determination.

Another request was: "If you find that the plaintiff realized or ought to have realized the condition of the windshield on the Davis car and that it was such as to interfere with the vision of the driver, Davis, it was the duty of the plaintiff to warn Mr. Davis not to proceed until the obstructed and frosted condition of the windshield had been corrected to such an extent as to make it safe to drive ahead." This request was faulty. The evidence was not all one way regarding the condition of the windshield. The plaintiff could not be found to have realized that its condition was such as to make it unsafe to drive ahead, unless and until the jury first found that that condition existed. The request should have told the jury that if it found that such condition existed and also found that the plaintiff realized or ought to have realized it, then it was his duty to warn Davis. The request was also in other respects badly phrased, and, if granted, might have been misunderstood. If it was intended to mean, that if the plaintiff realized or ought to have realized that the condition of the windshield was such, because of its claimed obstructed and frosted condition, as to interfere with the vision of Davis to such an extent as to make it unsafe to drive ahead, then it was the duty of the plaintiff to warn Davis not to proceed until the condition had been corrected, it should have so stated.

Another request was: "If the plaintiff voluntarily rode in the Davis automobile under circumstances when he knew or should have known that the windshield was so covered with frost as to make it difficult for the driver to have a clear view of the road ahead the plaintiff was negligent and the defendant is entitled to a verdict." The defendant was not necessarily entitled to a verdict because the

plaintiff was negligent. To be a bar to recovery the plaintiff's negligence must have been a proximate cause of the accident. *Bressett* v. *O'Hara*, 116 Vt 118, 123, 70 A2d 238; *Fletcher* v. *White*, 114 Vt 377, 45 A2d 569, and cases cited.

Before the jury was impaneled the plaintiff moved for a jury view of the scene of the accident and of the wrecked Davis automobile. When a view of the automobile was first suggested the purpose was stated to be to have the jury look at it "merely to show the effect upon his automobile of the force and amount of the force." After objection was made that a view is not evidence, it was stated that it wasn't offered for making it evidence in and of itself, but merely to make the evidence concerning it more understandable by the jury as it came in. The motion was granted after the jury was impaneled, and the defendant excepted. After the view, defendant's counsel, in chambers out of the hearing of the jury, called the court's attention to a remark he said was made to the jury at the view by Mr. Caldbeck, of counsel for the plaintiff, calling the jury's attention to the condition of the Davis automobile "as showing the force and effect of the collision," and asked for an exception on the ground that what the jury saw could not be used for that purpose, as evidence of the force and effect of the collision. There was considerable disagreement as to exactly what Mr. Caldbeck said, and immediately after returning to the court room the court instructed the jury that remarks of counsel made at the view are not evidence, nor is a view evidence, that the purpose of the view is to give the jury a better understanding of the evidence, and that it must find its facts from the evidence in court. It is here argued that it was error to permit the view in order to supply evidence, rather than understand the evidence introduced. Whether or not the remarks of counsel were erroneous, we think that under the circumstances any possible harm therefrom was cured by the court's instructions. Reversible error is not made to appear.

We have disposed of all questions raised.

*Judgment affirmed.*