# Gail Breslauer v. Fayston School District, et al.

[659 A.2d 1129]

No. 93-256

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 24, 1995

*James S. Suskin* and *Catherine Roberts-Suskin* of *Suskin &amp; Roberts-Suskin, P.C.*, Montpelier, for Plaintiff-Appellant.

*Peter B. Joslin* and *John Davis Buckley* of *Theriault & Joslin, P.C.,* Montpelier, for Defendants-Appellees.

**Dooley, J.** Plaintiff Gail Breslauer brought this action against the Fayston School District, her former employer; Fayston School Board; Robert Stanton, the former principal of the Fayston School; Andreas Lehner, principal of the Warren Elementary School; and the Warren School Board. The complaint centers on plaintiff's attempt to obtain a teaching job in the Warren Elementary School after leaving a similar position in the Fayston School. Most of the counts relate to adverse comments about plaintiff which she alleges were made by Stanton to Lehner and resulted in her not receiving the Warren teaching job. She alleges that these comments breached a written agreement between her and Stanton and the Fayston Board and were tortious under a number of theories. One count against Lehner and the Warren School Board alleges that they discriminated against her on account of age in not hiring her, in violation of the Vermont Fair Employment Practices Act. The superior court granted summary judgment in favor of all defendants except defendant Stanton. We affirm, in part, and reverse, in part.

Most of the facts are undisputed. Plaintiff was a teacher in the Fayston School District from 1974 to 1985, when she took a one year leave of absence. During her employment with Fayston, she had been very active in the teacher's union and became president and negotiator for the Valley Teachers' Association, the collective bargaining representative for teachers in a number of towns including Fayston and Warren. During her leave of absence, she was approached by William Lincoln, Superintendent of Schools, to inform her that the Fayston Board was satisfied with its staff and preferred that she not return to the Fayston School.

This contact led to the negotiation of a written agreement, which is at the heart of many of the counts of plaintiff's complaint. The main terms of the agreement were that: (1) plaintiff would continue on leave of absence for the 1986-87 school year; (2) during that year she would be paid $12,600 and could maintain group insurance coverage; (3) she would resign effective June 30, 1987; (4) all reference inquiries, particularly those made to principal Stanton, were to be referred to superintendent Lincoln "even though he may be physically out of Vermont"; (5) plaintiff and superintendent Lincoln were to negotiate a letter of recommendation to cover certain aspects of plaintiff's experience at Fayston; (6) any derogatory material, and any record of grievances, was to be removed from plaintiff's personnel file; and (7)

the parties agreed not to discuss or disclose the terms of the settlement or the issues that might have precipitated the agreement. The agreement was signed by plaintiff, the chair of the Fayston School Board, superintendent Lincoln, and principal Stanton.

In May of 1989, plaintiff decided to return to teaching and applied to fill either of two vacant positions at the Warren Elementary School. She was interviewed by principal Lehner, who thereafter called principal Stanton for a reference. By this time, Stanton had left Fayston and had become principal at the Stowe Elementary School. Stanton's telephone reference was negative. For example, he said plaintiff "polarized" the staff and caused "negative relations between the faculty and board." Lehner took notes of this conversation; the notes were found by a Warren teacher and turned over to plaintiff.

Lehner did not recommend that the Warren Board hire plaintiff in 1989, and again in 1990 when she applied for another job. He indicated in a deposition that a Warren teacher told him that the teacher would not be able to work with plaintiff. He also had a policy of not hiring "expensive" teachers, and plaintiff's salary would be quite high. He admitted, however, that he considered the information from Stanton in making his decision.

Plaintiff's amended complaint named the Fayston School Board (the Board) and the Fayston School District (Fayston), principal Stanton and principal Lehner and set forth eight counts: (1) breach of contract; (2) violation of plaintiff's rights of free speech and association because Stanton's actions were done to retaliate against plaintiff's union activities; (3) defamation; (4) intentional infliction of emotional distress; (5) violation of public policy; (6) invasion of privacy; (7) negligence of Fayston in failing to advise Stanton of his obligations under the contract and to supervise him; and (8) age discrimination against Lehner in not recommending that plaintiff be hired. The first seven counts were against the Fayston defendants and Stanton. Counts 5 and 8 were against Lehner. In response to Lehner's motion to dismiss the age discrimination count (count 8), plaintiff sought to join the Warren School Board and amend the count to make the Board the defendant. The court granted the motion to dismiss[1] and denied the motion to join the Board on the ground that the age discrimination claim was not properly joined with the remaining counts of the complaint.

---

[1] Although plaintiff has contested on appeal the denial of the motion to join the Board, she has not contested the dismissal of count 8 against Lehner.

The bulk of the case was considered on defendants' motion for summary judgment. The court dismissed the counts against Fayston related to Stanton's negative reference (counts 1 through 7), on the grounds that Fayston could not be responsible for the actions of Stanton once he left its employ.[2] As to count 7, the court ruled specifically that any duty Fayston had to supervise Stanton's conduct ended when he left its employ. The court did not dismiss counts 1 through 7 against Stanton.

On appeal, plaintiff raises four issues: (1) whether Fayston's duty to train or supervise Stanton continued after Stanton left its employ; (2) whether Stanton remained the agent of Fayston for purposes of the termination agreement even after he left its employ; (3) whether the court should have considered parol evidence on the meaning of the termination contract; and (4) whether the motion to join the Warren School Board was properly denied.

We first address the trial court's decision to dismiss count 7, which charged that Fayston had a duty of care to ensure that Stanton understood his obligations under the agreement with plaintiff, that Fayston knew from Stanton's past conduct that he was likely to give a negative evaluation of plaintiff, and that Fayston breached this agreement by failing to inform and supervise him in signing and performing the agreement. Plaintiff argues that Fayston is liable for any damage that occured as a result of the breach of this duty even if it occured after Stanton terminated his Fayston employment.

■ Plaintiff acknowledges that generally Fayston had no duty to control the conduct of a third person apart from its duty to control the conduct of its servants. Plaintiff relies on Restatement (Second) Torts § 315 (1965) to establish Fayston's direct duty of care to her:

§ 315. General Principle

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

   (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

---

[2] Count 5 alleged that all defendants violated public policies of Vermont and the United States. This count was dismissed as to all defendants, and that action is not contested in this appeal. To avoid confusion, we have included it in the mandate.

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

The wording of § 315 demonstrates the main deficiency in plaintiff's theory. The section is about "physical harm," see *id.* at § 7(3) (physical harm means "physical impairment of the human body, or of land or chattels"), but the gravamen of plaintiff's theory is that Stanton caused a breach of contract, and the loss of the Warren jobs, by his negative reference as communicated to Lehner. The injury related to plaintiff's negligence claim is economic.

■■ In explaining the relationship between tort and contract, Prosser and Keeton state:

[I]f the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent, then contract law should be the *only* theory upon which liability would be imposed.

. . . .

. . . Generally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things. This being so, the manifested intent of the parties should ordinarily control the nature and extent of the obligations of the parties to a contract of sale, either of real or personal property, or a contract of service.

W. Keeton, et al., Prosser & Keeton on The Law of Torts § 92, at 656-57 (5th ed. 1984) (emphasis in original). The limitation here is logical. Apart from the knowledge that Stanton might provide a negative evaluation of plaintiff unless prevented from doing so, there is nothing special about this contract that imposes on Fayston a duty to train one of its senior managers in implementing the contract. The contract itself created no duty to train or supervise. Stanton signed the contract which, under plaintiff's theory of the case, imposes on him a personal obligation to comply apart from his employment with Fayston. If we find a duty here, we create a new tort theory available in any breach of contract case where an economic entity acts through employees. We find this an unwise expansion of tort liability concepts.

■ In other contexts, we have been careful to maintain a dividing line between contract and tort theories of recovery. See, e.g., *Winey*

*v. William E. Dailey, Inc.*, 161 Vt. 129, 136, 636 A.2d 744, 749 (1993) (in construing consumer fraud law, Court holds that mere breach of contract does not raise presumption of fraud); *Favreau v. Miller*, 156 Vt. 222, 229, 591 A.2d 68, 73 (1991) (where personal injury is alleged, "concepts of tort and negligence law," rather than contract law, "provide the more straightforward way to describe the respective duties and liabilities of the parties"); *Bevins v. King*, 147 Vt. 203, 204, 514 A.2d 1044, 1045 (1986) (fraudulent nonperformance of contract is not a tort); *Lyon v. Bennington College Corp.*, 137 Vt. 135, 137, 400 A.2d 1010, 1012 (1979) (conversion action against college for taking of tenure of professor not maintainable because "contractual rights, which are personal and without marketability" are not goods that can be converted); *Lapoint v. Dumont Constr. Co.*, 128 Vt. 8, 10, 258 A.2d 570, 571 (1969) (law of negligence inapplicable to breach of contract action). That Fayston failed to discharge its obligations with reasonable care may be relevant to whether it breached the contract with plaintiff, the subject we consider under plaintiff's third claim. See *South Burlington School Dist. v. Calcagni-Frazier-Zajchowski Architects, Inc.*, 138 Vt. 33, 44, 410 A.2d 1359, 1364 (1980) (party to contract has "implied duty to perform with care, skill, reasonable expedience and faithfulness"). Fayston's liability, if it exists at all, must be on the basis that it breached its contractual obligations to plaintiff and not that this breach has somehow created an independent tort. The court was correct to dismiss count 7.[3]

Plaintiff's second and third claims require us to look at the standards for granting summary judgment because plaintiff argues that the rest of her case against Fayston was dismissed prematurely on this motion. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, after giving the benefit of all reasonable doubts and inferences to the nonmoving party. See *State v. Delaney*, 157 Vt. 247, 252, 598 A.2d 138, 141 (1991); V.R.C.P. 56(c). There is no genuine issue of fact for trial, however, where the record as a whole could not lead a rational trier of fact to find for the nonmoving party. See *Kelly v. Town of Barnard*, 155 Vt. 296, 305 n.5, 583 A.2d 614, 619

---

[3] We recognize that plaintiff claims that Stanton did more than simply violate the contractual provision; her theories include defamation, intentional infliction of emotional distress, invasion of privacy and punishment for exercise of free speech and association rights. As stated in count 7, however, her negligence theory against Fayston relates to training on the contractual terms and supervision of their implementation, and does not embody other intentional torts Stanton might have committed.

n.5 (1990). The standard of review by this Court is the same as the standard used by the trial court. See *Al Baraka Bancorp (Chicago), Inc. v. Hilweh*, 163 Vt. 148, 153, 656 A.2d 197, 200 (1994). With these standards in mind, we evaluate plaintiff's arguments that the breach of contract count should not have been dismissed against Fayston.[4]

Plaintiff's second claim is that there was sufficient evidence before the court to create an issue whether Stanton was a servant or agent of Fayston, with respect to implementing the termination agreement, even after Stanton left his employ with Fayston. We agree with the trial court that there was not sufficient evidence.

In making this argument, plaintiff relies almost exclusively on the following provisions of her termination agreement:

6. The undersigned parties will not publicly discuss or disclose either the terms of this settlement or the issues which might have precipitated this agreement;

7. Principal Stanton agrees to refer any employment inquiries to Superintendent Lincoln. He agrees to refer all inquiries to Superintendent Lincoln as the Superintendent is best able to speak to her employment performance due to his knowledge of her employment over many years;

8. The parties agree that all further employment inquiries will be referred to Superintendent Lincoln even though he may be physically out of Vermont.

9. Superintendent Lincoln will complete a letter of recommendation which will be completed and submitted to Ms. Breslauer on the date of the signing of this agreement. Said recommendation will address the following items to highlight Ms. Breslauer's ability as a teacher . . . .

Most of the terms relevant to this action specify which of the signatories is responsible for its implementation. Term 8 is drafted to specify the "parties'" agreement without specifically describing the responsibility for implementation. The agreement is signed by plaintiff, "William Lincoln, Superintendent," "Robert Stanton, Principal," and "Martha Benz, School Board Chair." There is no additional language to specify the obligations assumed by the signatories.

---

[4] We assume for purposes of this case that the underlying agreement plaintiff seeks to enforce is valid. Defendants have not claimed here, or in the trial court, that the agreement is unenforceable as against public policy. See Restatement (Second) of Contracts §§ 178, 179 (1981); *Bowman v. Parma Bd. of Educ.*, 542 N.E.2d 663 (Ohio 1988). Accordingly, we do not consider the possibility that such a defense exists.

■ In this argument, plaintiff distinguishes between her claim for breach of contract and her tort claims. In order to make Fayston vicariously liable for torts committed by Stanton, plaintiff must show a master-servant relationship between Stanton and Fayston. See Restatement (Second) of Agency § 219 (1958). A servant is "an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master." *Id.* § 2(2). The "essential element in the relationship of master and servant is the right of control." *Minogue v. Rutland Hosp.*, 119 Vt. 336, 338, 125 A.2d 796, 798 (1956). To be a master, the person "for whom the service is rendered must consent . . . to [it] being performed under his direction and control." *Stevens v. Nurenburg*, 117 Vt. 525, 528, 97 A.2d 250, 253 (1953).

Plaintiff's theory is that Stanton was acting for Fayston in giving a reference on plaintiff. In support of this theory, she states that the termination agreement "included Fayston and Stanton's agreement that Stanton would act on Fayston's behalf in regard to the handling of 'all future employment inquiries' about appellant." We find no such understanding between Fayston and Stanton in the wording of the agreement.

■ Even if plaintiff's characterization of the agreement were accurate, we must find evidence that Fayston retained a right of control over how Stanton responded to a reference request once Stanton left its employ. The only evidence plaintiff points to is the contractual provision that requires Stanton to refer employment inquiries to Lincoln. She argues that because the agreement was signed by both Stanton and the school board chair, it represents an obligation between these parties. We do not agree that the presence of the contractual agreement creates a right of control that makes Stanton a servant of Fayston. Even under a liberal view of what constitutes "control," we cannot find it present here. At best, Stanton could be found to be an independent contractor with Fayston. See Restatement (Second) of Agency at § 2(3) (independent contractor is one who "contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking"). In the absence of evidence of the right of control, the court properly granted summary judgment to Fayston on the tort claims (counts 2 through 6) because plaintiff failed to show that Stanton acted as Fayston's servant in giving the reference on plaintiff.

■ Alternatively, plaintiff argues there was sufficient evidence of a continuing principal-agent relationship with respect to plaintiff's agreement so that it was error to grant summary judgment on the breach of contract claim contained in count 1. Here, she claims she must show only a principal-agent relationship, a much lighter burden than showing a master-servant relationship necessary for imputed liability for torts. We disagree. Agency "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other so to act." *Id.* § 1(1). Again, we do not believe there is sufficient manifestation of control to create the relationship between Stanton and Fayston on which plaintiff relies. See *id.* § 14N, comment b.

Plaintiff's third claim also relates to the agreement and her position that Fayston breached its contractual obligations. She claims that the agreement is ambiguous, and, therefore, the court erred in refusing to consider extrinsic evidence that the contract continued to bind Fayston even after Stanton left its employ. The trial court's reasoning on this point was that the plain language of the agreement contained no provision extending Fayston's liability beyond the time for which Stanton was an agent. Since the parol evidence rule prohibits evidence that would "add to" the terms of a contract, the court found it would be a violation of the rule to allow evidence of the agency extension.

Our leading precedent on the use of extrinsic evidence in contract construction is *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 556 A.2d 81 (1988). Under *Isbrandtsen*, the threshold question is whether the contract is ambiguous, a question of law. *Id.* at 577, 556 A.2d at 83. In making this determination, the court may consider "evidence as to the circumstances surrounding the making of the agreement as well as the object, nature and subject matter of the writing." *Id.* at 578, 556 A.2d at 84. Thus, "[a]mbiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." *Id.* at 579, 556 A.2d at 84. If a contract is ambiguous, extrinsic evidence may be relied upon to construe it, without running afoul of the parol evidence rule. See *Milot v. Calkins*, 150 Vt. 537, 540, 554 A.2d 260, 262 (1988) (where contract is ambiguous, court can use parol evidence of parties' understanding of the terms); *William Feinstein Bros. v. L.Z. Hotte Granite Co.*, 123 Vt. 167, 171, 184 A.2d 540, 542 (1962).

■ Although the contract is silent on the precise issue before us, Fayston did obligate itself to refer all further employment inquiries to Superintendent Lincoln, without regard to when those inquiries would arise or through whom they would come. The best characterization of the situation is that the parties omitted mention of what happened when persons with knowledge of plaintiff's performance left Fayston's employ, and we must fill in a reasonable term under the circumstances. See Restatement (Second) of Contracts § 204 (1981); J. Calamari & J. Perillo, Contracts § 3-18 (3d ed. 1987). In such a case, parol evidence is admissible to show what is reasonable in the circumstances. Restatement (Second) of Contracts § 204, comment e.

■ One piece of evidence of surrounding circumstances cuts decidedly against Fayston's argument that the contract is unambiguous. Term 8 requires employment inquiries to be referred to Lincoln "even though he may be physically out of Vermont." The language was probably influenced by the fact that Superintendent Lincoln had announced his resignation as of June 30, 1986, twenty days after the signing of the contract, and was expected to leave Vermont. Thus, the parties expected that the person most responsible for implementing the agreement with respect to references would not be in the employ of Fayston when all or most of that implementation occurred. Unless Fayston's responsibility for implementation is ephemeral, it is reasonable to expect that its responsibility continued even after Stanton left its employ. If this were true of Lincoln, it may also be true of Stanton.

■ ■ We conclude that the agreement is ambiguous, and the court erred in not allowing plaintiff to introduce extrinsic evidence to show the agreement of the parties. In reaching this conclusion, we recognize that it is reasonable to assume that Fayston would not assume responsibility for the actions of persons it did not control. We emphasize, however, that this assumption was nowhere translated into contract language. Fayston could have created that right of control by a separate agreement with Stanton, or could have created a right of indemnity. That it did not take these steps in its self-interest does not necessarily mean its liability ended when Stanton left.

Plaintiff's fourth claim is that the court erred in failing to join the Warren School Board, and, as a result, dismissing count 8. This count alleged that one of the reasons plaintiff was not hired by Warren in 1989 and 1990 was that her salary would be high because of her years of prior experience. It alleged that this policy "has a disparate impact

on older teacher applicants" and, therefore, was age discrimination in violation of the Vermont Fair Employment Practices Act, 21 V.S.A. § 495. The trial court refused to allow joinder of Warren because the count did not involve the same transaction or series of transactions as the rest of the counts and there were no common questions of law and fact.

In order to obtain joinder, plaintiff must fit within V.R.C.P. 20, which provides in pertinent part:

### Rule 20. Permissive Joinder of Parties

(a) Permissive Joinder. . . . All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. . . .

The rule is identical to Fed. R. Civ. P. 20 for purposes of the issue before us. See Reporter's Notes to V.R.C.P. 20.

■ The rule must be liberally construed to facilitate joinder of actions and parties whenever possible. See *Staffco, Inc. v. Maricopa Trading Co.*, 595 P.2d 31, 35 (Ariz. 1979); *Sutterfield v. District Court*, 438 P.2d 236, 240 (Colo. 1968) (adopt "broadest possible reading" of rule); *Anderson v. McDonald*, 289 S.E.2d 729, 734 (W. Va. 1982) (rule must be "liberally construed"). In view of the presence of Rule 20(b) allowing the court to order separate trials "to prevent delay or prejudice," the philosophy of Rule 20(a) "is to allow virtually unlimited joinder at the pleading stage." 7 C. Wright, A. Miller and M. Kane, Federal Practice and Procedure: Civil 2d § 1660, at 436 (1986).

■ Although the claim against Warren and the claims against the other defendants are different, they relate to the same decision of Warren not to hire plaintiff. Thus, plaintiff's complaint has one damage section and does not distinguish between the injury caused by Stanton and Fayston and that caused by Warren. It alleges that as a "result of all aforementioned acts including the breach of contract, constitutional violations and torts, Plaintiff has suffered severe monetary damage, loss of fringe benefits, severe emotional and psychological distress, anguish, anxiety and injury."

Where multiple wrongs combine to produce a common injury, the majority of courts interpreting rules based on Fed. R. Civ. P. 20(a)

have held that the claims arise out of the "same transaction" or "occurrence" or a "series of transactions or occurrences" and have a question of fact "common to all defendants." See, e.g., *Sutterfield v. District Court*, 438 P.2d at 239; *State ex rel. Allen v. Barker*, 581 S.W.2d 818, 827 (Mo. 1979); *Carr v. Higdon*, 665 S.W.2d 382, 383-84 (Tenn. Ct. App. 1983) (collecting cases). We find these decisions persuasive and adopt their reasoning.

■ Despite our conclusion, we would not necessarily reverse a denial of joinder under Rule 20(a). The trial court has discretion in administering the rule to ensure fairness to all of the potential parties. See *Cobbin v. City & County of Denver*, 735 P.2d 214, 217 (Colo. Ct. App. 1987); *England v. Simmons*, 728 P.2d 1137, 1140 (Wyo. 1986). Although the rule implements a general policy of liberal disclosure, this result is not necessarily the fairest and most efficient in every case.

Because of its error in construing the rule, the trial court did not exercise its discretion in acting on plaintiff's motion to join Warren. Since we are remanding for further proceedings with respect to Fayston, we remand the denial of the motion to join for reconsideration in light of the standards and considerations set out above.[5]

*The dismissal of count 7 of plaintiff's complaint is affirmed. The dismissal of counts 2 through 6 against defendants Fayston School District and Fayston School Board is affirmed. The dismissal of count 1 against defendants Fayston School District and Fayston School Board, and the denial of the motion to join Warren School Board as a party defendant, are reversed, and the cause is remanded for proceedings not inconsistent with this opinion.*

---

[5] As stated in footnote 1, *supra*, plaintiff did not appeal the dismissal of count 8 as to Lehner. Thus, count 8, if allowed, must be redrafted to state a claim against only the Warren School Board.