USCA1 Opinion

 

 No. 96-2200 BAYBANK, Plaintiff, Appellant, v. VERMONT NATIONAL BANK, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ____________________ Before Torruella, Chief Judge, Bownes, Senior Circuit Judge, and Stahl, Circuit Judge. ____________________ John  J.  Kuzinevich  with  whom  Is aac H. Peres and Kuzinevich & Miller, P.C. were on brief for appellant. Robert W. Mahoney with whom Joseph L. Stanganelli, Hale and Dorr, LLP, and Potter Stewart, Jr. were on brief for appellee. ____________________ July 7, 1997 ____________________ STAHL, Circuit Judge.  Plaintiff-appellant Baybank filed a seven count complaint  against defendant-appellee Vermont National Bank for damages arising out of a failed loan in which Baybank had purchased  a  participation.1 The district court granted summary judgment  in  favor  of  Vermont National, and Baybank now appeals. Finding no error, we affirm. Background In 1986 Vermont National made a $1,750,000 loan due to mature on June 5, 1988, to Liftline Lodge, Inc., a ski operation. In early 1988, Vermont National and Baybank began negotiating  Baybank's potential participation in the loan. In April,  Baybank  consummated the purchase of an interest equal to 90%  of  the  outstanding principal balance of the Liftline loan. The parties executed a participation agreement and a participation certificate to memorialize the arrangement.  The participation agreement contained several inaccuracies. The agreement reflected a loan in the amount of $1,417,500 with an origination date of October 3, 1986, to mature on October 3, 1996. In fact, $1,417,500 represented only  the  amount  of  Baybank's participation, the loan originated on June 5, 1986 and was to mature on June 5, 1988. The 1. Baybank alleged breach of the participation agreement (two counts), breach of trust, breach of fiduciary duty and conversion. Baybank also sought declaratory and injunctive relief against Vermont National.  -2- 2 agreement  made  no  mention of renewal of the loan upon maturity. On June 5, 1988, six weeks after Baybank's purchase of the participation and upon the maturity date, Vermont National renewed the Liftline loan for a five year period to mature on June 5, 1993. Vermont National continued to remit and Baybank continued to accept without comment its 90% interest in Liftline's payments on the loan. By February, 1991, however, due to a series of poor ski seasons, Liftline defaulted on the loan and filed for bankruptcy.  Upon Liftline's default, Baybank cooperated with Vermont National in trying to resolve the Liftline situation favorably.   Baybank  neither demanded payment in full of its 90% share of the loan nor asserted that it had never agreed to participate in the 1988 renewal. It was not until 1993 that Baybank  first alleged that it never intended to participate in the renewal and filed this complaint. In  its  complaint,  Baybank sought damages arising from Vermont National's alleged breach of the participation agreement. Baybank claimed that the participation agreement did  not  extend to the renewal and, therefore, Vermont National owed Baybank its 90% share of the loan at maturity on June 5, 1988.   Baybank  based  its  claims for conversion, breach of trust and breach of fiduciary duty on this same allegation. Alternatively, Baybank contended that, even if the participation agreement extended to the renewal, Vermont -3- National breached the agreement by failing to provide Baybank with  items  of financial information as the agreement required. The  district  court granted summary judgment against Baybank on all counts. This appeal followed.  Standard of Review We  review  the  award  of  summary judgment de novo. See Ortiz-Pinero v. Rivera-Arroyo, 84 F.3d 7, 11 (1st Cir. 1996). Summary judgment is appropriate in the absence of a genuine issue of material fact, when the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). A fact is material when it has the potential to affect the outcome  of  the suit. See J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1250-51 (1st Cir.), cert. denied, 117 S. Ct. 81 (1996). Neither party may rely  on  conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits  to  demonstrate either the existence or absence of an issue of fact. See Fed. R. Civ. P. 56(c) & (e).  Discussion The central issue this case raises is whether the participation  agreement  contemplated Baybank's participation in the renewal. Finding the agreement ambiguous, the district court  admitted extrinsic evidence of the parties' intent as an aid  in  its  construction of the agreement. The court concluded -4- 4 that Baybank had agreed to participate in the renewal. On al Baybank contends that the contract was not ambiguous, and that even if it was, the evidence at a minimum precluded summary judgment on its claims. We examine each of Baybank's arguments in turn.  A. Was the Participation Agreement Ambiguous? T appe he  parties  agree that pursuant to the participation agreement,  Vermont law governs this dispute. See Miniter Ins. Agency, Inc. v. Ohio Indemnity Co., 112 F.3d 1240, 1245 (1st Cir.  1997)  (indicating that where parties agree as to what law governs, federal court sitting in diversity is free to forego an  independent  analysis  and may accept the parties' agreement). The parties also agree that the participation agreement misidentified several terms of the actual agreement, specifically, the amount of the loan and the origination and maturity dates. Baybank characterizes these as "scrivener's errors" and contends that under Vermont law the participation agreement reflects no substantive ambiguity. In Vermont, whether a contract is ambiguous is a question of law.2 See Breslauer v. Fayston Sch. Dist., 659 2. The parties agree that we should construe the participation agreement under general contract principles.  See, e.g., Den Norske Bank v. First Nat'l Bank of Boston, 75 F.3d 49, 52 (1st Cir. 1996) (applying general contract principles under Massachusetts law to analyze disputed participation agreement). Neither our research nor that of the parties has uncovered any Vermont authority suggesting a more appropriate analytical approach. -5- 5 A.2d  1129,  1135 (Vt. 1995); Isbrandtsen v. North Branch Corp., 556 A.2d 81, 83 (Vt. 1988). Vermont law, however, does not restrict courts making that inquiry to the four corners of a written agreement. Instead, courts may consider extrinsic evidence of "the circumstances surrounding the making of the agreement as well as the object, nature and subject matter of the  writing," Breslauer, 659 A.2d at 1135 (internal quotation omitted), and will find ambiguity in the event that a writing in itself supports a different interpretation than that which appears when read in light of the surrounding circumstances, See Isbrandtsen, 556 A.2d at 84. Both interpretations, however, must be reasonable in order to establish ambiguity. See id.  On its face the participation agreement seems unambiguous.  The parties, however, agree that the amounts and dates in the agreement do not reflect their actual understanding , and each party directs us to extrinsic evidence suggesting  competing  interpretations of the agreement. That we must resort to extrinsic evidence to determine the intent of the parties renders the contract necessarily ambiguous.3 3. Without regard to the legal strategy of either party, we note that neither of the litigants sought rescission and reformation on the basis of mistake. In Vermont, "[r]eformation is appropriate when an agreement has been made, or a transaction has been entered into or determined upon, . . . , but in reducing such agreement or transaction in writing, the written instrument fails to express the real agreement or transaction." LaRock v. Hill, 310 A.2d 124, 126 (Vt. 1973) (internal citations and quotations omitted).  -6- 6 Baybank argues unpersuasively that consideration of the participation certificate in conjunction with the participation agreement renders the latter unambiguous in Baybank's favor. We recognize that the participation certificate, executed on the same date as the participation agreement, correctly states the amount of Baybank's participation and explicitly refers to the June 5, 1986 note which had a maturity date of June 5, 1988. The participation certificate, however, neither references the participation agreement nor explicitly sets any parameters on Baybank's participation. The certificate, in other words, does not definitively resolve the agreement's ambiguity.  Even if we assume that consideration of these two documents  together results in one reasonable interpretation of the participation agreement, a host of extrinsic evidence in the record supports an alternative but equally reasonable interpretation. Much of this evidence also bears on the substance  of  Baybank's breach of contract claim and we discuss it fully in our analysis of that claim. We note only that Vermont law directs us to consider the circumstances Reformation of this agreement would require a consideration of any extrinsic evidence of the terms of the actual agreement which the writing in question failed to record.  See Paradise Restaurant, Inc. v. Somerset Enters., Inc., 671 A.2d 1258, 1262 (Vt. 1995). Whether through reformation or through a finding of ambiguity, therefore, we would need to construe the agreement through relevant extrinsic evidence.  As the parties have chosen the route of ambiguity, we let that doctrine frame our analysis.  -7- 7 surrounding the agreement; it does not direct us to select a single circumstance which if considered in a vacuum might resolve the ambiguity. See Breslauer, 659 A.2d at 1135 (directing courts to consider evidence on the circumstances surrounding  the making of the agreement as well as the object, nature and subject matter of the agreement itself).  B. Does the Participation Agreement Contemplate the Renewal? Courts faced with ambiguity in a contract resort to "subordinate  rules of construction," see Isbrandtsen, 556 A.2d at 85, including consideration of extrinsic evidence, see Abbiati  v.  Bu ttura & Sons, Inc., 639 A.2d 988, 991 (Vt. 1994), to determine the proper construction of the contract. The proper construction is that which reflects or effectuates the intent of the parties. See Abbiati, 639 A.2d at 991. In any given case relevance guides the use of extrinsic evidence. Some of the same evidence that may bear on whether a written contract is ambiguous may also cast light on the proper interpretation of the language upon a finding of ambiguity. See, e.g., id. at 991 (indicating that circumstances under which  the  contract arose are relevant in determining intent of parties).  Generally, the construction of a contract is a question of law. See Morriseau v. Fayette, 670 A.2d 820, 826 (Vt.  1995).   "[W]here the meaning of a contract is uncertain," however, "the intent of the parties becomes a question of -8- 8 fact."   Housi ng Vt. v. Goldsmith & Morris, 685 A.2d 1086, 1088 (Vt.  1996).   In  this  case, therefore, we must determine whether the  record  contains  sufficient evidence from which a reasonable jury  could  conclude that Baybank did not intend to participate in the renewal. We conclude that the record in this case allows for no such dispute. Instead it reflects that the parties intended the participation agreement to extend to the renewal, and, therefore, the district court appropriately granted summary judgment in favor of Vermont National. From Baybank's negotiations with Vermont National prior  to  June 5, 1988, the date that Baybank now claims marked the end of its participation period, until September of 1993, when  Baybank  filed  its  complaint, Baybank repeatedly reaffirmed its understanding that its participation extended to the renewal. George Todd Marchant, Vice President in Baybank's commercial loan department and member of Baybank's loan committee,  negotiated the initial participation agreement with Louis Dunham, Executive Vice President of Vermont National.4 Marchant  testified  that  he and Dunham discussed the anticipated renewal  of  the  Liftline  loan scheduled to occur six weeks after Baybank purchased its participation, and that the loan committee's approval of participation in the Liftline loan 4. The loan committee at Baybank had final authority to approve loans in which Baybank sought to participate. -9- 9 included participation in the renewal.5 Marchant further testified that a handwritten note in the top corner of one of the  loan  documents produced from Baybank's file read "per Lou, this note will be renewed on the same terms."6  From September 1991 to spring 1993, David Hobert, then an account officer with Baybank, served as the participating agent in the loan. In this capacity, Hobert oversaw the relationship between Baybank and Vermont National pertinent to the Liftline loan and worked with officials at Vermont National "in administering the direction of the loan and foreclosure." Hobert testified that when he assumed oversight  of  the  loan,  nearly two years after the maturity date to  which  Baybank now clings, "it was understood that [Baybank] had a 90% participation." On behalf of Baybank, Hobert worked closely with Vermont  National as the two banks considered their options and planned  their  workout  strategies.7 Hobert visited the Liftline 5. Marchant testified that he recalled a three year renewal rather than the five year renewal Vermont National asserts.  To the extent that fact is in dispute, it is not material to Baybank's claim; Baybank does not dispute the length of time of any renewal to which it agreed. Instead, Baybank argues, it never agreed to any renewal at all.  6. The testimony of Louis Dunham, Executive Vice President of Vermont National, corroborates Marchant's understanding of the scope of the participation.  7. Interestingly, rather than immediately file the present complaint against Vermont National, shortly after default Baybank filed suit in state court in Massachusetts against guarantors of the loan. -10- 10 lodge in 1992, nearly four years after the maturity date Baybank claims, to examine the collateral and participate in negotiations with the lodge owners on clearing the debt. Hobert  testified that he made this trip because Baybank "was a 90%  participant  in  the  loan," and he was invited to inspect the property  with  the  lead  bank. On behalf of Baybank, Hobert also proposed a settlement with Liftline's guarantors and proposed that Baybank and Vermont National form a corporation of which Baybank would own 90% and Vermont National would own 10%, for the  purpose  of  taking  title to the property and other assets of Liftline.  Documentary  evidence from Baybank's files throughout the life of the loan further undermines Baybank's renewal claim.   In  October  1988  and again in 1989, Baybank sent Vermont National "audit confirmation" notices requesting Vermont National  to  submit information regarding Baybank's interest in the Liftline loan. Both of the notices reflect a due date or maturity date of June 5, 1993, which corresponds with the maturity date of the renewed loan. Watch List Reports, in which Baybank lists "troubled" loans requiring additional monitoring,  listed  the  Liftline loan and specifically indicated an origination date of April 25, 1988 and a maturity date of June 5, 1993. As indicated, the question of the intent of the parties  to  an ambiguous agreement is one of fact. See Housing -11- 11 Vt., 685 A.2d at 1088. In this case Baybank has failed t any evidence that would place its intent t n the renewal in dispute. Instead, the record in o identify o participate  i this  case  establishes beyond question that Baybank intended to and did participate in the renewal of the Liftline loan. Accordingly, the district court correctly granted summary judgment in favor of Vermont National.8  C. Did Vermont National Commit Other Breaches of the Participation Agreement?  Baybank contends that even if the participation agreement  did extend to the renewal, Vermont National breached the  agreement  by  failing  to provide it with certain information the agreement required. Baybank also claims that Vermont National  settled  a  claim  against the individual guarantors over 8. Our conclusion that Baybank intended to participate in the renewal also forecloses Baybank's claims for conversion, breach of trust, and breach of fiduciary duty, all of which Baybank premises on its argument that the participation agreement required Vermont National to remit Baybank's 90% participation on June 5, 1988 rather than roll the funds into the renewal. With respect to conversion and breach of trust, Baybank fails to establish that Vermont National did anything impermissible with Baybank's participation interest. If we accept Baybank's assertion that Vermont National had a fiduciary duty to Baybank at least with respect to paying Baybank its share of the Liftline loan proceeds, Baybank fails to establish any conduct by Vermont National that constitutes a breach of that duty. Vermont National continued paying Baybank its participation share of the monthly payments until the default, and Baybank continued to accept those payments. After the bankruptcy court provided Vermont National with adequate protection payments on the Liftline loan, Vermont National forwarded Baybank 90% of each monthly payment.  -12- 12 Baybank's objection in contravention of the participation agreement.9 We find neither of these arguments persuasive.  The participation agreement provides:  As long as the Participating Bank continues to have an ownership interest in the Loan, the Originating Bank agrees to regularly provide the Participating Bank with complete and current credit related and other  information concerning the Borrower, the Loan and the collateral  securing the Loan . . . . Baybank points us to the deposition testimony of Kathleen Mullin  and  David  Hobert,  Baybank employees who oversaw the loan at different points during its existence. The district court reviewed  both of these sources and determined that they failed to establish even a dispute of fact as to whether Vermont National breached the participation in this way.  We  need  not  revisit this evidence in detail. Mullin testified  that  she  could  not remember specifically what Vermont National had failed to provide and what she had or had not received.   Hobert professed no knowledge as to why Baybank had 9. Baybank insists that it adduced "strong evidence" that Vermont National and Liftline did not actually execute the original loan on June 5, 1986, but rather backdated the note to reflect that date. According to Baybank, but for the backdating, the note was actually in default, and the participation agreement required Vermont National to inform Baybank of any default. Baybank's brief, one-paragraph discussion of this argument offers us no compelling reason to repeat the district court's thorough analysis or to disturb the court's legal conclusions.  -13- 13 not received certain documents, specifically, whether it was due  to  Vermont  National's delinquency or that of the debtors or guarantors. Mullin and Hobert simply could not recollect exactly what information Baybank had in its possession, what information Baybank sought and what information Vermont National failed to produce. In short, we agree with the district  court that their testimony fails to raise any genuine issue of material fact on this claim.  Finally, Baybank argues that Vermont National breached the participation agreement by settling a claim against the individual guarantors of the Liftline loan. The participation agreement prohibited Vermont National from "waiv[ing]  or  releas[ing] any claim against any Borrower and/or against any co-maker, guarantor or endorser under the Loan." Baybank directs us to the affidavit of Richard Butler, Senior Vice President of Baybank, who claims that Vermont National settled against the guarantors in contravention of Baybank's instructions. This conclusory assertion simply mischaracterizes the record. The record reveals that on April 15, 1993, Mark LaPointe of Vermont National and David Hobert met with attorneys for the guarantors. Hobert, not LaPointe, proposed a settlement but failed to reach an agreement with the guarantors.   A  memorandum dated April 20, 1993, the veracity of which  Baybank  does  not  dispute, memorializes this meeting. The -14- 14 guarantors then moved to enforce a settlement agreement in bankruptcy  court despite the fact that none of the parties had agreed to final terms of settlement. Vermont National and Baybank both opposed the motion. The bankruptcy court, however, granted the motion, effectively forcing settlement upon  the  banks. Butler's conclusory allegations fail to raise a genuine issue of material fact.  Conclusion Having  found  no error, we conclude that the district court appropriately granted summary judgment in favor of Vermont National on all counts. Affirmed. Costs to appellee. -15- 15