# Springfield Hydroelectric Company, et al. v. Lawrence D. Copp and Jonathan Downer

[779 A.2d 67]

No. 00-044

Present: Amestoy, C.J., Dooley, Morse and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed July 6, 2001

*Mary P. Kehoe* of *Saxer Anderson Wolinsky & Sunshine PC*, Burlington, for Plaintiffs-Appellants.

*Thomas F. Heilmann* and *D. James Mackall* of *Heilmann, Ekman & Associates, Inc.*, Burlington for Defendants-Appellees.

**Amestoy, C.J.** Appellants Springfield Hydroelectric Company, et al., appeal the superior court's summary judgment ruling on behalf of appellees Lawrence Copp and Jonathan Downer, former employees of Vermont Power Exchange (VPX). Appellants, all owners of commercial hydroelectric facilities, allege that appellees in their individual capacities negligently administered a power purchase agreement which resulted in shared economic damages. The trial court granted appellees' motion for summary judgment, ruling that appellants' claims fall within the scope of the economic loss rule, prohibiting tort recovery for purely economic losses. We affirm.

Between 1984 and 1996, VPX[1] served as the designated purchasing agent for Vermont's Public Service Board (PSB), administering the sale of hydroelectric power from small power producers to retail utility companies in Vermont. To perform this function, VPX entered into power purchase agreements with each of the appellants, owners of small commercial hydroelectric generating facilities, and was paid a fee by them.

Managing the construction and financial security concerns of new power producers to ensure that they could meet the terms of the power sales agreements was among VPX's responsibilities. As part of the scheme set up under the federal Public Utility Regulatory Policy Act of 1978 § 210, 16 U.S.C.A. § 824a-3 (2000), power producers qualify for "levelized rates," which sometimes provide them with compensation greater than the cost of production during the early years of a 30-year power sales contract, and less compensation over later years. In effect, the levelized rates operate as a loan to producers.

In order to safeguard ratepayers against producers going out of business before the end of their agreement, a pooled trust fund was set up to which all producers contributed a percentage of their receipts.

---

[1] VPX was a Chapter 7 debtor in the United States Bankruptcy Court, and is not a party to this case. Apparently, appellants asserted negligence and breach of contract claims against VPX in its bankruptcy proceedings, claiming damages due to the acts and omissions of its officers and directors. Appellants' attempt to join appellees as defendants in the bankruptcy proceeding was denied.

The fund functioned to secure the power producers' performance of their agreements with VPX, and to provide protection to Vermont ratepayers in the event that any of the producers became insolvent during the 30-year levelized rate period. Otherwise, the fund would be returned to the producers. One of VPX's duties was to administer the pooled trust fund. The PSB, however, maintained sole authority and control over disbursement of the fund, the authority to order payment of proceeds into the fund, and the power to liquidate the fund in the event of a default by one of the power producers.

The appellants represent all of the participants in the pooled trust fund, with the exception of Williams River, which, although not a party, is the subject of this action. Williams River constructed a hydroelectric facility, Brockways Mill, which produced power from March 1988 to November 1989. Williams River subsequently defaulted, and shut down the Brockways Mill facility. As a result, the PSB ordered the monies from the pooled trust fund be disbursed.

At the trial court, appellants alleged that appellees Copp and Downer, in their capacities as officers or employees of VPX, acted as their agents in the administration of the power purchase agreement with Williams River. As such, appellants contended that defendants negligently rendered professional services in permitting the facility to go "on-line," which, due to its subsequent insolvency, resulted in the diminution of the trust fund by $161,144.

Appellants sought damages for their reliance upon appellees' "negligently rendered professional services," and asserted that appellees were negligent in their duty to exercise due care under agency theory. Appellees moved to dismiss the action, asserting that economic damages cannot be recovered in tort actions. The trial court granted summary judgment to appellees, finding the case to fall squarely within the economic loss doctrine.

On appeal, appellants claim that: 1) the economic loss doctrine does not bar them from recovery because they are not asserting economic loss; 2) alternatively, in the event that the damages requested are economic losses, the professional services exception to the economic loss rule permits recovery; and 3) appellants and VPX entered into a principal/agent relationship in which VPX, as agent, violated its duty of care.

In reviewing a summary judgment ruling, we use "the same standard as the trial court," and affirm the granting of a motion for summary judgment "if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Granger*

*v. Town of Woodford,* 167 Vt. 610, 611, 708 A.2d 1345, 1346 (1998) (mem.); V.R.C.P. 56(c).

■ Appellants first contend that the trial court erred in concluding that their claims were barred under the economic loss rule, which prohibits recovery under tort for purely economic losses. The rule, as previously set forth in this Court, states that " '[n]egligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm.' " *Gus' Catering, Inc. v. Menusoft Systems,* 171 Vt. 556, 558, 762 A.2d 804, 807 (2000) (mem.) (quoting *O'Connell v. Killington, Ltd.,* 164 Vt. 73, 77, 665 A.2d 39, 42 (1995)) (alteration in original). The underlying premise of the economic loss rule is that negligence actions are best suited for "resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement." *Spring Motors Distribs. v. Ford Motor Co.,* 489 A.2d 660, 672 (N.J. 1985).

■ As our caselaw makes clear, claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract. In *Gus' Catering,* we denied the purchaser of defective computer software its claims for lost business profits, customers, and time, stating, "plaintiff sought damages for not having received the benefit of the bargain to which it believed it was entitled, and such a loss of its disappointed commercial expectations is not recoverable under our negligence law." *Gus' Catering,* 171 Vt. at 559, 762 A.2d at 807-08. Similarly, in *Paquette v. Deere & Co.,* 168 Vt. 258, 263, 719 A.2d 410, 414 (1998), we denied the tort claims of purchasers of an allegedly defective motor home, holding that their claims for purely economic damages for the reduced value of the home was actionable under warranty rather than tort. Again, we stated that the purchaser's "loss relates to their disappointed commercial expectations, and thus is not recoverable under a theory of products liability." *Id.* See also *Vermont Plastics, Inc. v. Brine, Inc.,* 824 F. Supp. 444, 449 (D. Vt. 1993). But see *Green Mountain Power Corp. v. General Elec. Corp.,* 496 F. Supp. 169, 174 (D. Vt. 1980) (finding liability for negligence resulting in economic loss should not necessarily be precluded as a matter of policy).

■ Appellants attempt to distinguish this case from our previous holdings, asserting that as adopted by this Court, the economic loss

rule applies only to products liability cases. According to appellants, "[e]conomic damages are damages for diminished commercial expectations associated with *a product.*" (Emphasis added.) However, the rule is not so narrow. As articulated by the trial court, the economic loss rule, though "deeply rooted in product liability law," has broader application. One court delineated the current application of the economic loss rule, stating, "[a]lthough its initial development was in direct response to the emergence of strict liability in tort theories, its application is now much broader as it serves today to maintain the boundary between contract law and tort law." *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269 (Colo. 2000); see also *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1259 (Colo. 2000). For example, in *Strickland-Collins Construction v. Barnett Bank*, 545 So. 2d 476, 477-78 (Fla. Dist. Ct. App. 1989), the court denied a negligence claim for lender liability for failure to exercise greater control over a project and the disbursement of funds. See also *Grynberg*, 10 P.3d at 1268 (applying economic loss rule to claims that cattle investment program was designed and run improperly resulting in "less than a specified rate of return"); *Breslauer v. Fayston Sch. Dist.*, 163 Vt. 416, 421-22, 659 A.2d 1129, 1133 (1995) (denying negligence claim for economic losses for breach of employment contract); *East River Steamship Corp. v. Transamerica Delaval*, 476 U.S. 858, 870-71 (1986) (recognizing the economic loss rule as applied to products liability under admiralty law). The economic loss rule clearly applies to commercial disputes outside the confines of product liability, and consequently to the instant action.

■ Appellants' attempt to recharacterize the damages they seek, asserting that they are not economic damages but "compensation for the damages they were forced to pay to third parties," is also unavailing. "Economic loss is defined generally as damages other than physical harm to persons or property." *Town of Alma*, 10 P.3d at 1264. Appellants here seek to be reimbursed for losses to the trust which, absent Brockways Mill bankruptcy, would have been returned to them "according to their respective contributions." As the trial court aptly put it, "[h]owever stated, it is only money." Because the damages which appellants seek are purely economic, the trial court was correct in concluding that this case falls squarely within the economic loss doctrine. See *East River*, 476 U.S. at 870 ("by definition [if] no person or other property is damaged, the resulting loss is purely economic").

We have been careful to maintain a dividing line between contract and tort theories of recovery. *Breslauer*, 163 Vt. at 421, 659 A.2d at 1133. We also take note of recent decisions from other jurisdictions which have begun to limit the broad application of the economic loss rule in certain contexts. See A. O'Brien, *Limited Recovery Rule as a Dam: Preventing a Flood of Litigation for Negligent Infliction of Pure Economic Loss*, 31 Ariz. L. Rev. 959, 962 (1989). However, even where courts have permitted recovery for economic loss, they have required a "special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor." *Aikens v. Debow*, 541 S.E.2d 576, 589 (W.Va. 2000). The underlying analysis turns on whether there is "a duty of care *independent* of any contractual obligations." *Grynberg*, 10 P.3d at 1269; *Town of Alma*, 10 P.3d at 1262. In the present case, neither privity of contract, nor a special relationship, exist between appellants and appellees which would permit a finding of duty on the part of appellees. See *Gus' Catering*, 171 Vt. at 559, 762 A.2d at 808 ("'Absent a duty of care, an action for negligence fails.'") (quoting *Rubin v. Town of Poultney*, 168 Vt. 624, 625, 721 A.2d 504, 506 (1998) (mem.)).

Appellants assert the existence of such a duty on the part of appellees through their actions as professionals under a claimed "professional services" exception to the economic loss rule. Appellants place great weight on a footnote contained in *Vermont Plastics* in which the federal district court in Vermont, having predicted that this Court would not permit a tort claim to proceed where purely economic damages have been suffered by a commercial entity, cautioned that it did not intend to "undermine third party recovery in negligence for purely economic losses suffered as a result of reliance upon negligently rendered professional services." *Vermont Plastics*, 824 F. Supp. at 450 n.7; see also *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 18 (2d Cir. 2000) ("[T]he better course is to recognize that the [economic loss] rule allows . . . recovery in the limited class of cases involving liability for the violation of a professional duty. To hold otherwise would in effect bar recovery in many types of malpractice actions."). It is unnecessary, however, to determine the merit and extent of a "professional services" exception to the economic loss rule given the facts of this case. Although appellees' work may have involved complex and specialized tasks, it is undisputed that appellees

did not hold themselves out as providers of any licensed professional service. See *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 199 (8th Cir. 1995) (negligent performance of professional services exception to the economic loss doctrine has been applied to negligence claims involving defendants who have provided professional services to plaintiffs and who have been held to a professional, rather than ordinary, standard of care). Although appellees, as either officers or employees of a regulated facility, maintained complex and highly specialized responsibilities, the law imposes no special duty upon them for the purpose of a negligence action, which would permit finding an exception to the economic loss rule in this case.[2]

Appellants also contend that appellees acted as their agents for which appellees owed a duty of care. There is nothing in the record in this case on which to base such an assertion. See *Rule v. N.H.-VT. Health Service*, 144 Vt. 323, 326, 477 A.2d 622, 624 (1984) (whether agency relationship exists depends on facts of each case). "An agency relationship results when one party consents to another party acting as its agent." *Kimco Leasing Co. v. Lake Hortonia Properties*, 161 Vt. 425, 429, 640 A.2d 18, 20 (1993); see also Restatement (Second) of Agency § 1 (1958) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.").

█ Although employees of VPX, neither of appellees, as individuals, were " 'subject to the [appellants'] control.' " *Kimco*, 161 Vt. at 429, 640 A.2d at 20 (quoting *Swanson v. Wabash College*, 504 N.E.2d 327, 331 (Ind. Ct. App. 1987)). On the contrary, the PSB maintained all decisionmaking authority with regard to the trust fund, most importantly for the purposes of this action, the power to order the disbursement of funds in the event of a default by one of the power producers. VPX was charged with administering the fund on behalf of the PSB, not on behalf of the power producers. By monitoring producer performance, as well as the operational and maintenance concerns of each plant, VPX functioned for the benefit of both ratepayers and power producers. Because VPX maintained responsibilities to all parties, the state, ratepayers and the power producers, the assertion that its

---

[2] Appellants assert that whether a claim falls within the specialized professional services exception is a question of fact. The governing issue, however, is whether the law imposed upon appellees a duty of care. *Aikens*, 541 S.E.2d at 581 ("The determination of whether a defendant . . . owes a duty to the plaintiff is not a factual question for the jury; rather [it] . . . must be rendered by the court as a matter of law.").

employees worked as appellants' agents has no merit. Finally, nothing in the power purchase agreements between VPX and appellants contemplated services to be specifically provided by individual VPX employees or appellees in particular. See *Breslauer*, 163 Vt. at 425, 659 A.2d at 1134-35 (finding no sufficient manifestation of control to create an agency relationship where the primary economic entity acted through employee). Appellants fail to establish the existence of an agency relationship between the parties on which to base appellees' asserted duty of care.

*Affirmed.*