NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 11

No. 23-AP-311

| | |
|---|---|
| Stowe Aviation, LLC et al. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orleans Unit, |
| | Civil Division |
| | |
| Agency of Commerce & Community Development | January Term, 2024 |

Mary Miles Teachout, J. (Ret.)

Michael B. Stevens of Derrevere Stevens Black & Cozad, Burlington, for Plaintiffs-Appellants.

Charity R. Clark, Attorney General, and David R. Groff, Assistant Attorney General, Montpelier, for Defendant-Appellee.

PRESENT:  Reiber, C.J., Eaton, Carroll and Cohen, JJ., and Tomasi, Supr. J., Specially Assigned

¶ 1.     **CARROLL, J.**   Plaintiffs Stowe Aviation, LLC and Stowe Airport Investment, LP appeal from an order denying their motion to reopen this breach-of-contract case and for leave to file a second amended complaint.  We reverse and remand.

¶ 2.     Plaintiffs make the following allegations in their first amended complaint.[1]  In May 2014, plaintiffs and the Vermont Agency of Commerce and Community Development (ACCD) executed a memorandum of understanding (MOU).  The MOU set out the parties' responsibilities relating to plaintiffs' intention to develop and expand the Morrisville-Stowe State Airport using

---

[1]  We take no position on the merits of plaintiffs' allegations.

investments secured through the EB-5 program.[2]  Under the MOU, ACCD and its in-house EB-5 program administrator, the Vermont Regional Center,[3] agreed to assist plaintiffs with oversight and administration of the EB-5 program as it related to plaintiffs' project and to assist the project's EB-5 investors.  Plaintiffs acquired four EB-5 investors in the first year, obtained a $4.6 million grant from the Federal Aviation Administration, and raised $1.7 million in private financing.  Plaintiffs expanded the airport's services and hours of operation and secured commercial airline service to the airport.

¶ 3.    In December 2014, ACCD separately executed a MOU with the Department of Financial Regulation (DFR) without notice to plaintiffs.  Under that MOU, DFR assumed ACCD's obligations in relation to plaintiffs' project.  At about this same time, there were concerns—later substantiated—that several unrelated EB-5 projects at Jay Peak and elsewhere in the Northeast Kingdom of Vermont had been involved in a years-long scheme by project directors to embezzle EB-5 funds for private gain.  See generally State v. Quiros, 2019 VT 68, 211 Vt. 73, 220 A.3d 1241.  DFR's unilateral involvement with plaintiffs was related to these concerns.  At the time plaintiffs executed the MOU with ACCD, ACCD had represented to plaintiffs that the Jay Peak projects were subject to "gold standard" oversight.

¶ 4.    DFR demanded that plaintiffs execute a new MOU with different terms or else face cancellation of the airport project and the May 2014 MOU with ACCD.  Plaintiffs refused and

---

[2]  We have previously explained the EB-5 program in detail.  See generally Sutton v. Vt. Reg'l Ctr., 2019 VT 71A, 212 Vt. 612, 238 A.3d 608.  In brief, the EB-5 program, administered by the United States Customs and Immigration Services via regional state-level centers, such as the Vermont Regional Center, allows foreign investors to make a qualifying investment in commercial projects throughout the United States to obtain permanent-resident status for themselves and their spouses and children.

[3]  VRC is not a distinct legal entity from ACCD.  Accordingly, for clarity we refer only to ACCD throughout unless it is infeasible to do so.

ACCD cancelled the May 2014 MOU and provided a copy of the cancellation notice to plaintiffs' lender. The lender suspended financing of the project. The project subsequently failed.

¶ 5. Based on these and other allegations, plaintiffs filed a two-count complaint against ACCD. Plaintiffs complained in count one that they executed the MOU with ACCD based on its representations that it provided "gold standard" oversight of EB-5 projects, when in fact a significant fraud had been perpetrated on its watch. Because of this oversight failure, plaintiffs alleged, ACCD breached its obligation to perform under the MOU, causing the project to fail and damaging plaintiffs. In count two, plaintiffs alleged that ACCD's misrepresentations about its oversight of other EB-5 projects amounted to bad-faith conduct and destroyed plaintiffs' right to receive benefits under the May 2014 MOU. Plaintiffs contended that ACCD's conduct breached the implied covenant of good faith and fair dealing.

¶ 6. The trial court granted the State's motion to dismiss for failure to state a claim on both counts. It found ACCD's representations about its oversight capabilities irrelevant to the analysis. It concluded that the MOU did not contain any provision promising oversight of the Jay Peak projects for the benefit of plaintiffs. It did find that plaintiffs had alleged a basis for a breach-of-contract claim with respect to ACCD's "unauthorized and unilateral transfer of the MOU to DFR," DFR's subsequent demands on plaintiffs, and ACCD's ultimate cancellation of the May 2014 MOU. Plaintiffs did not, however, adequately plead damages related to this alleged breach, and therefore failed to state a claim. The court found that a potential claim of breach of the implied covenant of good faith and fair dealing arising from the same allegations suffered from the same deficiency. Plaintiffs did not request leave to amend the complaint prior to the court's decision— nor did the court sua sponte grant such leave in its order. It dismissed the complaint pursuant to Vermont Rule of Procedure 41(b) and closed the case the same day.

¶ 7. Plaintiffs moved under Vermont Rule of Civil Procedure 15 to amend the complaint in response to the court's identification of a potential basis for plaintiffs' two claims. The State

3

opposed the motion, arguing that repleading under Rule 15 only applied to an operative complaint, and because the court had closed the case, plaintiffs had to first move the court to reopen or vacate judgment under Vermont Rules of Civil Procedure 59 or 60. Plaintiffs then timely filed a restyled motion seeking relief under either Rule 59 or 60, and submitted a proposed second amended complaint attempting to cure the deficiencies the court identified in its final order. Plaintiffs argued that having an opportunity to cure a pleading deficiency was appropriate relief under Rule 59(e), and in the alternative, that the failure to grant leave to amend in the final order was a clerical mistake and a basis to reopen the case under Rule 60(b).

¶ 8.     The court concluded that for plaintiffs to prevail under Rule 59(e), the court had to have made a mistake, not plaintiffs. It found that plaintiffs' failure to request leave to amend in the event the court ruled in ACCD's favor on both counts was not a fault or mistake of the court, but of plaintiffs. It found that the proposed second amended complaint contained new arguments that plaintiffs could have pleaded before it closed the case. It determined that dismissal with prejudice was appropriate under Rule 41(b) because the order was a final order that disposed of all claims. See Stratton Corp. v. Engelberth Const. Inc., 2015 VT 75, ¶ 17, 199 Vt. 388, 124 A.3d 489 ("If the court does not specify that the dismissal is without prejudice . . . the dismissal will be with prejudice" when "the court expressly provides that dismissal was with prejudice" or "when it is silent on the matter." (quotation omitted)). It concluded that Rule 60 motions filed within the time allowed for Rule 59 motions should be treated the same as relief requested under Rule 59, and that it had not made a clerical mistake in failing to sua sponte grant leave to amend. The court accordingly denied the motion. Plaintiffs appealed this order.

¶ 9.     Plaintiffs first contend that the trial court committed error as a matter of law in its order granting the State's motion to dismiss. They argue that their first amended complaint stated a claim arising from the transfer of oversight duties to DFR and ask this Court to reverse on that ground. We decline to reach this argument because it is raised for the first time in plaintiffs' brief.

4

In their notice of appeal, plaintiffs stated that they sought to appeal only the order denying their Rule 59 motion; they did not appeal the May 2023 order dismissing the complaint. Moreover, plaintiffs did not challenge the merits of the dismissal order in any of their postjudgment motion papers in the trial court. We therefore do not reach their claim concerning that order here. See In re White, 172 Vt. 335, 343, 779 A.2d 1264, 1270 (2001) ("We have repeatedly stressed that we will not address arguments not properly preserved for appeal.").

¶ 10.    Plaintiffs also assert that Rule 59(e) is a viable means to reopen the pleadings, and the trial court abused its discretion in denying relief under that rule. We agree that plaintiffs can potentially obtain Rule 59(e) relief, and therefore reverse the order denying plaintiffs' Rule 59(e) motion and remand for further proceedings to evaluate plaintiffs' request to replead consistent with this opinion.[4]

¶ 11.    We review orders denying Rule 59(e) relief for an abuse of discretion. Houghton v. Leinwohl, 135 Vt. 380, 382, 376 A.2d 733, 736 (1977). An abuse of discretion occurs where the court "has withheld its discretion entirely or" has exercised it "for clearly untenable reasons or to a clearly untenable extent." HSBC Bank USA N.A. v. McAllister, 2018 VT 9, ¶ 8, 206 Vt. 445, 182 A.3d 593 (quotation omitted). "We view the evidence in the light most favorable to the prevailing party when reviewing the disposition of a Rule 59 motion." N. Sec. Ins. Co. v. Mitec Elec., Ltd., 2008 VT 96, ¶ 34, 184 Vt. 303, 965 A.2d 447.

¶ 12.    The first question presented is whether plaintiffs can prevail on a Rule 59(e) motion to replead where plaintiffs did not seek leave to amend their complaint prior to the court's merits decision and where the court dismissed with prejudice and closed the case. We review this question of law without deference to the trial court. State v. Amidon, 2008 VT 122, ¶ 16, 185 Vt.

---

[4] Plaintiffs concede that Rule 60 motions filed within the time allowed for Rule 59 motions are treated as Rule 59 motions, and we therefore confine our discussion to Rule 59 in this opinion. See Gregory v. Poulin Auto Sales, Inc., 2012 VT 28, ¶ 17 n.3, 191 Vt. 611, 44 A.3d 788.

1, 967 A.2d 1126 ("The interpretation of procedural rules is a question of law which we review de novo.").

¶ 13. Rule 59(e) provides courts with "the power to rectify [their] own mistakes in the period immediately following the entry of judgment." Mitec, 2008 VT 96, ¶ 41 (quotation omitted). This power includes the ability to "change . . . a dismissal with prejudice to one without prejudice" and to clarify judgments, among other relief. Reporter's Notes, V.R.C.P. 59; State v. Champlain Cable Corp., 147 Vt. 436, 438, 441, 520 A.2d 596, 597, 600 (1986). We have never addressed whether the court's power includes granting Rule 59(e) relief to cure a pleading deficiency, but we have encountered similar questions before. In State v. Equinox House, Inc., 134 Vt. 59, 350 A.2d 357 (1975), the State took a direct appeal from a dismissal order. We explained that a safer course would have been to first seek relief under Rule 59 or 60. We nevertheless held that the State presented a "persuasive case," particularly in light of our liberal amendment standard, and directed the court to strike the order and permit, on motion, the State to file an amended complaint under Rule 60(b). Id. at 63, 350 A.2d at 360.

¶ 14. We revisited the topic in Mitec, where the issue was whether a prevailing party who did not plead a recoupment cause of action in an insurance-coverage case could do so after entry of judgment. We first held that the right to amend provided by Rule 15 no longer attached after entry of judgment. Mitec, 2008 VT 96, ¶ 39. We disagreed with the trial court's conclusion that a "manifest injustice" basis under Rule 59(e) provided an avenue to amend the complaint to include the new claim. Id. ¶ 42 (explaining that manifest injustice is one of four basic grounds of relief under Rule 59(e)). We surveyed the cases cited by the trial court and in a leading civil-practice treatise—11 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995)—and found no similarity between those cases and the situation in Mitec, where the party could have brought its recoupment claim sooner but failed to do so. Id. ¶¶ 42-44. We concluded that the omission was "entirely due to the fault or neglect" of the plaintiff because its "complaint

6

did not so much as mention reimbursement of attorney's fees." Id. ¶ 45 (internal quotation marks omitted).

¶ 15.    While neither Equinox nor Mitec is entirely on point, we are persuaded that both cases imply that curing a pleading deficiency is a possible basis for relief under Rule 59(e).[5]  As we noted in Equinox, "[f]reedom of amendment is a fundamental principle of our rules."  134 Vt. at 62, 350 A.2d at 359; see also Foman v. Davis, 371 U.S. 178, 181-82 (1962) (stating that Rule 59 motion to amend should have been granted because purpose of civil rules, including Rule 15, is that "[i]f the underlying factors or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits").  And while we ultimately reversed the trial court in Mitec, we did so because Rule 59(e) was not a viable means to add a new claim the litigant conceded it could have pleaded before the court entered judgment.  Our decision was based on the specific facts of that case, and we did not express or imply that the rule never allowed repleading after the court closes the case or enters judgment.

¶ 16.    Rule 59(e) relief to amend pleadings is available in most if not all the federal circuits.  See, e.g., Acevedo-Villalobos v. Hernandez, 22 F.3d 384, 389 (1st Cir. 1994), cert. denied, 513 U.S. 1015 (1994), reh'g denied, 513 U.S. 1122 (1995); Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc., 970 F.3d 133, 142 (2d Cir. 2020); Jang v. Boston Sci. Scimed, Inc., 729 F.3d 357, 367-68 (3d Cir. 2013); Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006) (en banc); Schiller v. Physicians Res. Grp. Inc., 342 F.3d 563, 568-69 (5th Cir. 2003); Bunn v. Navistar, Inc., 797 Fed. App'x. 247, 257 (6th Cir. 2020); Harris v. City of Auburn, 27 F.3d 1284, 1286-87 (7th Cir. 1994); United States v. Mask of Ka-Nefer-Nefer, 752 F.3d 737, 742-43 (8th Cir. 2014); see also

---

[5]  In a three-Justice memorandum decision, we strongly intimated that Rule 59(e) relief to replead was an option for parties if properly litigated.  Childs v. Valente, No. 2007-333, 2008 WL 2793869, at *2-3 (Vt. Apr. 1, 2008) (unpub. mem.) [https://perma.cc/ML9Q-HZBB].

<u>Rule v. Tobin</u>, 168 Vt. 166, 169, 719 A.2d 869, 871 (1998) (stating that Court looks to federal cases when Vermont procedural rule is substantially identical to federal rule).

¶ 17.    In <u>Williams v. Citigroup Inc.</u>, 659 F.3d 208 (2d Cir. 2011) (per curiam), the Second Circuit encountered facts similar to the present dispute.  There, the district court dismissed the plaintiff's complaint and entered final judgment the following day.  The plaintiff timely moved to reopen the judgment and sought leave to cure defects in the original complaint that the court identified in its dismissal order.  The court denied the motion on the bases that the plaintiff could have presented the proposed new facts earlier and failed to explain why the court should grant "leave to replead at this stage when [the plaintiff] failed to request an opportunity to replead in the first instance."  <u>Id</u>. at 212.

¶ 18.    The Second Circuit reversed.  It first refused to find an abuse of discretion where the court failed to sua sponte grant leave to replead in its dismissal order.  However, it concluded that the court abused its discretion in denying the motion for reconsideration.  It noted that, "[a]s a procedural matter, [a] party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to [Rules] 59(e) or 60(b)."  <u>Id</u>. at 213 (quotation omitted) (alterations in original).  It explained that "postjudgment motions for leave to replead must be evaluated with due regard to both the value of finality and the policies embodied in Rule 15."  <u>Id</u>.  Balancing these two considerations, it held that the district court abused its discretion by requiring the plaintiff to move for leave to replead "in the first instance."  <u>Id</u>. at 214.  The court held that the U.S. Supreme Court in <u>Foman</u> "makes unmistakably clear there is no such rule" requiring litigants to request leave to amend with their opposition papers or to do so before the court enters judgment.  <u>Id</u>.  The court vacated the judgment and remanded for the district court to "address whether the proposed amendments would be futile" under Rule 15 and whether the proposed amendments cured the deficiencies the court identified in light of the competing interests in finality and liberal amendment policies underlying Rule 15.  <u>Id</u>.

8

¶ 19. We similarly hold that the trial court's denial of plaintiffs' motion in this case was an abuse of discretion. The court correctly noted that Rule 59(e) is meant to remedy mistakes made by the court, not litigants. However, the court's conclusion that relief was unavailable because plaintiffs should have requested leave to amend in their opposition papers cannot be squared with Equinox, Mitec, or the federal cases addressing the topic, including Foman. Such practice may be recommended, but the rules do not require it.

¶ 20. The trial court likewise did not adequately address plaintiffs' proposed new allegations pleaded in response to the dismissal order. Cf. Mitec, 2008 VT 96, ¶¶ 44-46 (holding that Rule 59(e) relief not available on manifest injustice basis where party sought to add entirely new claim it conceded could have pleaded before entry of judgment). Plaintiffs' second amended complaint contains new allegations of damages arising from the transfer of oversight to DCF and subsequent cancellation of the May 2014 MOU, which the trial court had found lacking. In light of this opinion, the court may determine that plaintiffs' new allegations are a good-faith attempt to flesh out the "underlying facts" and "circumstances" plaintiffs already pleaded and which the court identified "may be a proper subject of relief." Foman, 317 U.S. at 182. If so, plaintiffs "ought to be afforded an opportunity to test" their claims "on the merits." Id.

¶ 21. On remand, therefore, plaintiffs must first convince the court to reopen the case under Rule 59(e) before they can file their second amended complaint. The standard to prevail on a Rule 59(e) motion in this context is more exacting, because the presumption to grant leave to amend under Rule 15 "disappears after judgment has been entered." Harris, 27 F.3d at 1287; see Metzler, 970 F.3d at 146 (explaining that purposes underlying Rule 15 are one consideration in ruling on postjudgment motion to replead, but are not "sole" consideration, and standard to grant leave to replead postjudgment is more "exacting"); Mitec, 2008 VT 96, ¶ 44 (citing Harris, 27 F.3d at 1287, for proposition that prejudgment presumption to grant leave to amend under Rule 15 "disappears" after entry of judgment or case closure). "[I]t would be contradictory to entertain a

9

motion to amend the complaint without a valid basis to vacate the previously entered judgment." Metzler, 970 F.3d at 142 (quotation omitted). Plaintiffs must demonstrate one of the "four basic grounds" for granting a Rule 59 motion. Mitec, 2008 VT 96, ¶ 42 (quoting Wright & Miller, supra, § 2810.1).

¶ 22. Here, the most plausible ground for assessing the motion is to "prevent manifest injustice." Id. Factors the court may consider in determining whether reopening a case for the purpose of amending a complaint is necessary to prevent manifest injustice include: whether the court has previously permitted amendments and whether it did so following a decision on the merits, the conditions under which the court dismissed the previous claims, and how many times the litigant sought leave to amend. See Metzler, 970 F.3d at 145-48. This list is not exclusive. Furthermore, this analysis, while "significantly more" narrow than a prejudgment Rule 15 analysis, Janese v. Fay, 692 F.3d 221, 229 (2d Cir. 2012), should nonetheless be mindful of our liberal attitude toward allowing amendments. See Equinox, 137 Vt. at 62, 350 A.2d at 359.

¶ 23. If plaintiffs sufficiently demonstrate a basis for relief under Rule 59(e), the inquiry proceeds to whether plaintiffs' second amended complaint meets the ordinary Rule 15 standard. Colby v. Umbrella, Inc., 2008 VT 20, ¶ 4, 184 Vt. 1, 955 A.2d 1082 (identifying factors to evaluate whether to allow party to amend pleadings under Rule 15 including undue delay, bad faith, futility, and prejudice); Bevins v. King, 143 Vt. 252, 254-56, 465 A.2d 282, 283-84 (1983). Plaintiffs can only file their second amended complaint if they prevail on both Rule 59(e) and Rule 15 standards.

The order denying plaintiffs' postjudgment motion for reconsideration is reversed, and the matter is remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____
Associate Justice

10