NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 38

No. 24-AP-352

| | |
|---|---|
| Aleksandra Veljovic | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| TD Bank, N.A. et al. | May Term, 2025 |

Samuel Hoar, Jr., J.

Robert J. Kaplan and Christopher William Hardy of Kaplan and Kaplan, Burlington, for
  Plaintiff-Appellant.

Elizabeth M. Lacombe and Michael Zullo of Duane Morris, LLP, Hartford Connecticut, for
  Defendant-Appellee TD Bank N.A.

Susan J. Flynn of Flynn Messina Law Group, PLC., Burlington, for Defendant-Appellee
  Zlata Cavka.


PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1.    **REIBER, C.J.**    Plaintiff Aleksandra Veljovic appeals from the dismissal with prejudice of her negligence, negligent supervision, and respondeat superior claims against TD Bank, N.A. and its former employee, Zlata Cavka. Plaintiff alleged that the employee negligently notarized a fraudulent document that was ultimately used by plaintiff's ex-husband to secure a divorce order in Serbia leading to her loss of marital property. She argued that TD Bank should be held liable under the legal theories cited above. The court dismissed plaintiff's complaint, concluding that plaintiff could not recover for purely economic losses and she failed to show the

existence of a special relationship between the parties. It also denied plaintiff's post-judgment request to amend her complaint. We agree with the court's conclusions and therefore affirm.

## I. Background

¶ 2. Plaintiff filed her complaint in May 2024, alleging the following facts. Plaintiff and her ex-husband were married in Serbia, later immigrating to the United States and settling in Vermont. In 2019, plaintiff's husband abandoned her and their minor daughter. At some point thereafter, plaintiff initiated a divorce proceeding in Vermont. The divorce was finalized in 2022, without husband's appearance or participation. The Vermont divorce decree, among other things, awarded plaintiff the couple's marital property in Serbia.

¶ 3. Shortly after the Vermont divorce was finalized, plaintiff learned that her ex-husband had obtained a divorce decree in Serbia in July 2021. She had no prior awareness of the Serbian divorce proceeding. The Serbian divorce decree awarded the couple's marital property in Serbia to the ex-husband. This was the same marital property awarded to plaintiff in the Vermont divorce decree.

¶ 4. After investigation, plaintiff discovered that her ex-husband had used a Serbian document to authorize an attorney in Serbia to represent plaintiff's interests in the Serbian divorce. Plaintiff did not sign the document, and her signature was a forgery. Cavka provided notary services in her capacity as a bank employee, and she allegedly notarized the Serbian document in July 2021 while employed by TD Bank. Plaintiff never met Cavka, and Cavka had never notarized a document bearing plaintiff's true signature.

## II. Procedural History

¶ 5. TD Bank moved to dismiss plaintiff's complaint pursuant to Vermont Rule of Civil Procedure 12(b)(6), arguing that (1) plaintiff's claims were barred by the economic-loss rule, (2) neither TD Bank nor Cavka owed plaintiff "any independent duty of care," and (3) plaintiff failed to plead facts establishing necessary causation. Plaintiff opposed defendant's motion.

¶ 6.     In August 2024, the court granted TD Bank's motion, dismissing plaintiff's claims against it with prejudice. The court determined that plaintiff sought compensation solely for economic losses arising from her ex-husband's use of the fraudulently notarized document. The court explained that the economic-loss rule generally prohibits recovery in tort for purely economic losses. It went on to explain that a plaintiff asserting a negligence claim may be able to recover for purely economic losses only in limited circumstances, such as where there is a "special" or professional relationship that creates a duty of care independent of contractual obligations between the plaintiff and the defendant. The court rejected plaintiff's argument that her case fell within the professional services exception, concluding that plaintiff failed to show that she had a special relationship with either defendant. It based this conclusion on plaintiff's complaint where she admitted she had never met defendant Cavka and failed to allege that she was a TD Bank accountholder. The court held that her claims against TD Bank did not fall within the narrow exception to the economic-loss rule and failed as a matter of law. The court ordered plaintiff to show cause why it should not dismiss the claims against defendant Cavka for the same reason. Plaintiff failed to respond, and the court dismissed plaintiff's claims against Cavka.

¶ 7.     Plaintiff moved for reconsideration and also sought to amend her complaint. The court denied both motions, explaining that plaintiff raised no issues of fact or law that the court had not already considered. This appeal followed.

### III. Discussion

¶ 8.     Plaintiff first argues that the trial court erred in dismissing her complaint because she alleged sufficient facts to show a "special relationship" between the parties.

¶ 9.     This Court "review[s] the trial court's disposition of a motion to dismiss de novo, and may affirm on any appropriate ground." Bock v. Gold, 2008 VT 81, ¶ 4, 184 Vt. 575, 959 A.2d 990 (mem.). A motion to dismiss may be granted "only if it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Birchwood Land Co. v. Krizan,

3

2015 VT 37, ¶ 6, 198 Vt. 420, 115 A.3d 1009 (quotation omitted). In deciding the motion, we "assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor." Montague v. Hundred Acre Homestead, LLC, 2019 VT 16, ¶ 10, 209 Vt. 514, 208 A.3d 609. "The purpose of a dismissal motion is to test the law of the claim, not the facts which support it." Id. (quotation omitted).

¶ 10. "[N]egligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm, which does not include economic loss." Gus' Catering, Inc. v. Menusoft Sys., 171 Vt. 556, 558, 762 A.2d 804, 807 (2000) (mem.) (quotation omitted). Economic loss is defined as "damages other than physical harm to persons or property." Springfield Hydroelectric Co. v. Copp, 172 Vt. 311, 315, 779 A.2d 67, 71 (2001) (quotation omitted).

¶ 11. Thus, the economic-loss rule "prohibits recovery in tort for purely economic losses." Long Trail House Condo. Ass'n v. Engelberth Const., Inc., 2012 VT 80, ¶ 10, 192 Vt. 322, 59 A.3d 752 (quotation omitted). In Long Trail, we explained that "[t]he rule serves to maintain a distinction between contract and tort law" because "[i]n tort law, duties are imposed by law to protect the public from harm, whereas in contract the parties self-impose duties and protect themselves through bargaining." Id. (quotation omitted).

¶ 12. We determine application of an exception to the economic-loss rule primarily based on the duties that exist between the parties. Long Trail, 2012 VT 80, ¶ 13. Vermont law recognizes that, in some circumstances, a plaintiff asserting a negligence claim may be able to recover for purely economic losses where there is a special relationship between the plaintiff and the defendant, and the defendant has assumed the responsibility not to violate a professional duty owed to the plaintiff. See EBWS, LLC v. Britly Corp., 2007 VT 37, ¶ 31, 181 Vt. 513, 928 A.2d 497; Long Trail, 2012 VT 80, ¶ 13. Our holdings support that there "might be recovery for purely economic losses in a limited class of cases involving violation of a professional duty." Long Trail,

4

2012 VT 80, ¶ 13 (quotation omitted). "Although a [professional] license may be indicative" of a special relationship, "it is not determinative." EBWS, 2007 VT 37, ¶ 31. The "key" to determine whether a professional service creates an independent duty of care "is not whether one is licensed in a particular field" but "rather, the determining factor is the type of relationship created between the parties." Long Trail, 2012 VT 80, ¶ 13 (quotation omitted). The analysis "turns on whether there is a duty of care independent of any contractual obligations" arising from a special relationship between the parties. Springfield Hydroelectric Co., 172 Vt. at 316, 779 A.2d at 71-72 (quotation and emphasis omitted).

¶ 13. A special relationship requires a close relationship of trust, confidence, or reliance between the parties. See, e.g., Walsh v. Cluba, 2015 VT 2, ¶ 30, 198 Vt. 453, 117 A.3d 798 (observing that "doctor-patient or attorney-client" relationships are classic examples); Sachs v. Downs Rachlin Martin PLLC, 2017 VT 100, ¶ 29 n.4, 206 Vt. 157, 179 A.3d 182 (recognizing that "purely monetary damages" are recoverable in a legal malpractice action); Zeno-Ethridge v. Comcast Corp., 2024 VT 16, ¶ 20, 219 Vt. 121, 315 A.3d 978 ("In other areas of tort law . . . we define the term 'special relationship' narrowly to include relationships that involve control or professional care over others, such as between a parent and child or a mental-health professional and patient."); Estate of Alden v. Dee, 2011 VT 64, ¶ 32, 190 Vt. 401, 35 A.3d 950 ("The duty to disclose arises out of a special relationship of confidence or trust—such as the fiduciary relationship between trustee and beneficiary.").

¶ 14. In Sutton v. Vermont Regional Center, 2019 VT 71A, 212 Vt. 612, 238 A.3d 608, we identified facts that support the existence of a special relationship. These include (1) whether the defendant "initiated a close relationship" with the plaintiff; (2) whether the defendant endorsed an action to "members of the public generally" or through personal solicitation and individualized relationships; and (3) whether the defendant targeted "a narrow class of identified people" who "relied on" the defendant's representations. See Id. ¶ 33.

¶ 15.    Here, plaintiff failed to allege facts that would enable recovery under an exception to the economic-loss rule.  In her complaint, plaintiff admitted that she never met or used the services of the notary, defendant Cavka.  Therefore, plaintiff's complaint lacked any allegations indicating that she had any relationship, much less a close or "special" relationship, with Cavka or that she relied on Cavka's notarial services.  The only connection plaintiff alleges between herself and Cavka was that Cavka notarized a document purportedly containing plaintiff's signature, allegedly presented to Cavka by plaintiff's ex-husband.  Without facts that establish a relationship of trust, confidence, or reliance between plaintiff and Cavka, plaintiff's claims are barred by the economic-loss rule.

¶ 16.    Plaintiff attempts to overcome her lack of personal relationship by claiming that Cavka's status as a notary public is itself sufficient to establish a special relationship.  Plaintiff argues that the notary's services qualify under the professional services exception because a notary is a public officer who owes a duty to the public to perform her service with diligence.  Plaintiff cites cases from the Third Circuit and several state courts in support of this argument, requesting this Court follow the guidance of these jurisdictions.  Plaintiff failed to raise this argument in the trial court prior to its dismissal decision, arguing only that the notary owed her a duty as the person whose signature is being notarized.  Plaintiff raised her argument that a notary owes a duty to the public for the first time in her V.R.C.P. 59(e) motion to reconsider.  However, a "Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1 (3d ed. 2024) (footnotes omitted); see also Reporter's Notes—2006 Amendment, V.R.C.P 59 (noting amendment to Rule 59(e) for "conformity with the Federal Rules").  Because plaintiff did not raise this argument in the trial court prior to judgment, it is not preserved for appeal.  Felis v. Downs Rachlin Martin PLLC, 2015 VT 129, ¶ 27, 200 Vt. 465, 133 A.3d 836 (observing that theory of liability not argued below is not preserved for appeal).

¶ 17.    Following the trial court's ruling, plaintiff sought to amend her complaint to include an allegation that she held an account at TD Bank to support her contention that she shared a special relationship with the bank.

¶ 18.    Vermont Rule of Civil Procedure 15(a) provides that a party may amend a pleading after entry of judgment "only by leave of court or by written consent of the adverse party." Additionally, for the court to grant leave to amend post-judgment, the plaintiff must first succeed in having the final judgment set aside under Rule 59(e), which did not occur here.  See Stowe Aviation, LLC v. Agency of Com. & Cmty. Dev., 2024 VT 11, ¶¶ 18, 21, 219 Vt. 70, 312 A.3d 1017 (holding that plaintiff seeking to amend complaint post-judgment must first have final judgment set aside under Rule 59(e)).  In certain instances, denial of a Rule 15(a) motion "may be justified based upon a consideration" of several factors, including the futility of the amendment. Colby v. Umbrella, Inc., 2008 VT 20, ¶ 4, 184 Vt. 1, 955 A.2d 1082.  We review a trial court's denial of a plaintiff's motion to file an amended complaint for abuse of discretion.  N. Sec. Ins. Co. v. Mitec Elecs., Ltd., 2008 VT 96, ¶ 34, 184 Vt. 303, 965 A.2d 447.

¶ 19.    Plaintiff fails to show an abuse of discretion here.  The fact that plaintiff was an account holder alone, without a showing that she placed her trust, confidence, and reliance in the bank in connection with the procurement of notary services by her husband, does not suffice to show a special relationship.  Nor do the added allegations address how plaintiff's account-holder status relates to the notarial services that Cavka allegedly provided to her ex-husband.  At most, the new allegations suggest that TD Bank owed plaintiff certain contractual obligations due to her status as an account holder.  However, such allegations do not establish "a duty of care independent of any contractual obligations."  Springfield Hydroelectric Co., 172 Vt. at 316, 779 A.2d at 71 (quotation and emphasis omitted); see also Walsh, 2015 VT 2, ¶ 31 n.2 ("[T]he tort duty, to be actionable, must not be 'interwoven' with the contract." (quotation omitted)).  Plaintiff cannot show that she relied on TD Bank to provide her with notary services because she admits that she

never procured notary services from the bank and she was not present when the allegedly forged document was notarized.

¶ 20.    Plaintiff thus fails to establish that she shared a special relationship with the bank to oversee notarial services offered by any of its employees.  See Shulman v. Concord Gen. Mut. Ins. Co., 618 F. Supp. 3d 165, 175 (D. Vt. 2022) (holding that plaintiffs failed to sufficiently allege "a special relationship of trust" with insurer where insurer had "made no contact with plaintiffs"). Therefore, because plaintiff's proposed amended complaint, like her original complaint, cannot show that an exception to the economic-loss rule applies, it cannot withstand a motion to dismiss, and amendment would therefore be futile.  The trial court did not abuse its discretion in denying plaintiff's post-judgment motion to amend her complaint.  See Vasseur v. State, 2021 VT 53, ¶¶ 7, 16, 215 Vt. 224, 260 A.3d 1126 (affirming denial of motion to amend complaint because amended complaint would not have survived motion to dismiss).

Affirmed.

FOR THE COURT:

_____
Chief Justice