Filed 08/11/25

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 25-CV-01310

| | |
|---|---|
| Lacillade's, LLC,<br>        Plaintiff<br><br>        v.<br><br>Kimberly Dreslin,<br>        Defendants | DECISION ON MOTION |

## RULING ON PARTIAL MOTIONS TO DISMISS

In this breach of contract case, Plaintiff Lacillade's, LLC is seeking to recover money it asserts Defendant Kimberly Dreslin owes for custom kitchen cabinets it provided as part of Dreslin's kitchen renovation. Lacillade's is represented by Attorney Kevin Lumpkin, Esq. and Dreslin is represented by Attorneys Russell D. Barr, Esq. and Scott L. Keyes, Esq. Lacillade's asserts claims for breach of contract, unjust enrichment, and violation of the Prompt Payment Act, codified at 9 V.S.A. §§ 4001-09 ("the PPA"). Dreslin denies she owes any money to Lacillade's and has counterclaimed for breach of contract, negligence, and violation of the Prompt Payment Act. Pursuant to Rule 12(b)(6) of the Vermont Rules of Civil Procedure, Lacillade's moves to dismiss Dreslin's claims for negligence and violation of the PPA. For the reasons discussed below, Lacillade's motion to dismiss these two counts is GRANTED.

## Factual Background

For purposes of deciding the instant motion, the Court accepts the following facts alleged in Defendant's Counterclaim as true. The Court makes no finding as to their accuracy.[1]

In mid-2024, Dreslin contracted with Lacillade's for new custom kitchen cabinets and countertops. After the cabinets were in production, Dreslin requested a change in the paint color. There was some back and forth about whether the color could be changed at that stage of the work order's progress. Lacillade's told Dreslin that she could cancel the order and reorder the cabinets for an increased cost and delay in delivery, or the cabinets could be delivered primed and then painted by a third party. Dreslin told Lacillade's to reorder the cabinets in a different color, but was then told that was no longer an option, at which point Dreslin told Lacillade's she would accept the original color. However, Lacillade's apparently removed the cabinets from

---

[1] *See Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514 ("On a motion to dismiss, the court must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor.").

production anyway, and then got a quote from a third-party painter to finish the work. Although Dreslin was displeased, she felt she was left with no choice but to proceed. When Lacillade's provided Dreslin with final CAD drawings of the cabinets, it was discovered that the measurements were off, and the new cabinets would not fit in Dreslin's kitchen without additional demolition and other work by Dreslin's contractor.

When the new cabinets were delivered, Dreslin's contractor found problems with the fit and several flaws in the paint job. In addition, several items were missing, including pantry drawers, glass doors, an end panel, and shelves. Dreslin also learned that the third-party painting affected the manufacturer's warranty for the cabinets. Lacillade's demanded payment in full despite the fact that some of the cabinetry parts and none of the countertops had yet been delivered. Lacillade's also sought to collect more for the outside painter than it told Dreslin she would have to pay. While the parties were disputing different aspects of the project, Lacillade's began removing some of the cabinetry from Dreslin's garage without Dreslin's consent. As of February 2025, Dreslin still had no countertops, and only half of the cabinets are installed or functional.

In March 2025, Lacillade's filed this action against Dreslin, asserting claims for breach of contract, unjust enrichment, and violation of the Prompt Payment Act. Dreslin answered the Complaint and filed a counterclaim, asserting claims for breach of contract, negligence, and violation of the PPA. Lacillade's seeks to dismiss Dreslin's claims for negligence and violation of the PPA.

Discussion

"The purpose of a motion to dismiss is to test the law of the claim, not the facts which support it." *Powers v. Office of Child Support*, 173 Vt. 390, 395 (2002). When considering a Rule 12(b)(6) motion, the court assumes the truth of the facts alleged, making all reasonable inferences in the plaintiff's favor. *Fleurrey v. Dep't of Aging and Indep. Living*, 2023 VT 11, ¶ 4, 217 Vt. 527. Dismissal is proper if "it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Birchwood Land Co. v. Krizan*, 2015 VT 37, ¶ 6, 198 Vt. 420 (quotation omitted). As our Supreme Court has held, "where the plaintiff does not allege a legally cognizable claim, dismissal is appropriate." *Montague*, 2019 VT 16, ¶ 11 (citation omitted).

I.     Defendant's Counterclaim for Negligence.

In addition to asserting a claim for breach of contract against Lacillade's, Dreslin also makes a claim for negligence based on the same allegations. Lacillade's argues the negligence claim is barred by the economic loss rule. Dreslin contends her claim somehow falls under the very limited exception to the economic loss rule that exists for parties having a special relationship. The Court disagrees.

As the Vermont Supreme Court very recently confirmed, "[n]egligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm, which does not

2

include economic loss." *Veljovic v. TD Bank, N.A.*, 2025 VT 38, ¶ 10 (quoting *Gus' Catering, Inc. v. Menusoft Sys.*, 171 Vt. 556, 558, 762 A.2d 804, 807 (2000) (mem.)). Thus, "claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract." *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 30, 181 Vt. 513 (quoting *Springfield Hydroelec. Co. v. Copp*, 172 Vt. 311, 314, 779 A.2d 67, 70 (2001)). Dreslin's counterclaim makes clear that the losses she claims are purely economic: she is seeking to recover her increased contractor costs for the demolition and renovations to make the cabinets fit as well as the cost of installing a temporary kitchen. *Cf. Walsh v. Cluba*, 2015 VT 2, ¶ 28, 198 Vt. 453 ("[I]njury to the product or property that is the subject of a contract is generally considered disappointed economic expectation for which relief lies in contract rather than tort law."). Therefore, Dreslin's negligence claim falls squarely within the operation of the "economic loss rule." *See Hamill v. Pawtucket Mut. Ins. Co.*, 2005 VT 133, ¶ 7, 179 Vt. 250 ("[T]he economic-loss rule serves to maintain the boundary between contract law, which is designed to enforce parties' contractual expectations, and tort law, which is designed to protect citizens and their property by imposing a general duty of reasonable care." (citations omitted)). Vermont has adopted this rule, which "prohibits recovery in tort for purely economic losses." *Veljovic*, 2025 VT 38, ¶ 11 (quotation omitted); *see also Heath v. Palmer*, 2006 VT 125, ¶ 15, 181 Vt. 545 ("[P]laintiffs' remedy for the purely economic losses resulting from the reduced value or costs of repairs of the construction defects sounded in contract rather than tort.").

Dreslin argues her claim falls under the narrow exception to the economic loss rule our Supreme Court has recognized for cases where the parties have a special relationship, independent of any underlying contractual relationship. *EBWS*, 2007 VT 37, ¶ 31. According to the *Springfield Hydroelectric* Court:

> [E]ven where courts have permitted recovery for economic loss, they have required a "special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor."

172 Vt. at 316 (quoting *Aikens v. Debow*, 541 S.E.2d 576, 589 (W.Va. 2000)); *see also Veljovic*, 2025 VT 38, ¶ 12 ("Vermont law recognizes that, in some circumstances, a plaintiff asserting a negligence claim may be able to recover for purely economic losses where there is a special relationship between the plaintiff and the defendant, and the defendant has assumed the responsibility not to violate a professional duty owed to the plaintiff."). "The underlying analysis turns on whether there is a duty of care independent of any contractual obligations." *Springfield Hydroelec.*, 172 Vt. at 316 (quotation omitted); *see also Walsh*, 2015 VT 2, ¶ 27 ("The determining factor in deciding whether to apply the economic-loss rule is not whether privity exists but rather whether there is a duty separate and apart from a contractual duty." (quotation omitted)).

Whether a "special relationship" exists depends on the "type of relationship created between the parties." *EBWS*, 2007 VT 37, ¶ 31; *see Sutton v. Vermont Reg'l Ctr.*, 2019 VT 71A, ¶ 33, 212 Vt. 612 (plaintiffs sufficiently alleged special relationship to prevent economic loss doctrine from barring tort claim where defendant initiated close relationship, recruiting plaintiffs

to invest life savings in EB-5 project, "by promising exceptional oversight and management of the investment"). In the past, our Supreme Court has found it significant whether defendants "[held] themselves out as providers of any licensed professional service" or "maintained complex and highly specialized responsibilities." *EBWS*, 2007 VT 37, ¶ 30. The Court has cautioned, though, that a professional license in a particular field "may be indicative of this [special] relationship, [but] it is not determinative." *Id*. ¶ 31. "A special relationship requires a close relationship of trust, confidence, or reliance between the parties." *Veljovic*, 2025 VT 38, ¶ 13. The Court has also indicated that such relationships usually take the form of "a professional relationship such as doctor-patient or attorney-client . . . such that it automatically triggers an independent duty of care that supports a tort action even when the parties have entered into a contractual relationship." *Walsh*, 2015 VT 2, ¶ 30 (quotation omitted).

Dreslin fails to identify any analogous cases where a court has found a "special relationship" to exist between a customer and a builder or custom manufacturer, nor is this Court aware of any. Indeed, the only "special relationship" that the Supreme Court appears to have found to support an exception to the economic loss rule that did not involve a doctor-patient or attorney-client relationship was in *Sutton*, where it was alleged that the defendant "initiated a close relationship with plaintiffs by recruiting them to invest their life savings in the Jay Peak Projects by promising exceptional oversight and management of the investment." *Sutton*, 2019 VT 71A, ¶ 33. In addition, plaintiff asserted that defendant "personally solicited individual investors, and entered into individualized relationships with each plaintiff, who paid substantial fees" as part of that relationship. *Id*. Thus, the Court articulated factors that should be considered in determining whether a special relationship may be found, including:

> (1) whether the defendant "initiated a close relationship" with the plaintiff; (2) whether the defendant endorsed an action to "members of the public generally" or through personal solicitation and individualized relationships; and (3) whether the defendant targeted "a narrow class of identified people" who "relied on" the defendant's representations.

*Veljovic*, 2025 VT 38, ¶ 14 (quoting *Sutton*, 2019 VT 71A, ¶ 33).

Consideration of these factors and comparison of the *Sutton* facts with the allegations here makes clear that the Supreme Court would not apply the special relationship exception to this case. Dreslin does not allege any special relationship with Lacillade's and alleges no facts suggesting that Lacillade's owed her a duty of care independent from or beyond the parties' contractual relationship. Rather, her claims arise from the parties' contract and are based on the same facts as her breach of contract claim. In short, the facts Dreslin alleges are a far cry from the close relationship the defendant in *Sutton* initiated and developed with the foreign investors. Thus, as was the case in *EBWS*, Dreslin's counterclaim demonstrates that "there was no special duty of care beyond the terms of the . . . contract and no exception to the economic-loss rule applies." *EBWS*, 2007 VT 37, ¶ 32.

Accordingly, Lacillade's motion to dismiss Dreslin's negligence claim is granted.

II.     Defendant's Counterclaim Under the Prompt Pay Act.

"The purpose of the prompt payment act is to provide protection against nonpayment to contractors and subcontractors." *Birchwood Land Co. v. Ormond Bushey & Sons, Inc.*, 2013 VT 60, ¶ 21, 194 Vt. 478. The PPA requires "owners to pay contractors in accordance with the terms of the construction contract." *Id*. (quoting 9 V.S.A. § 4002(a)). If an owner delays payment when it is due, the PPA requires the owner "to pay interest at the statutory rate." *Id*. (quoting 9 V.S.A. § 4002(d)). Although the PPA recognizes an owner's right to withhold payment for "good faith claims against an invoicing contractor or subcontractor," 9 V.S.A. § 4007(a), it does not provide owners with any substantive rights. Thus, whereas Lacillade's, as the contractor, may be entitled to a 1% per month statutory penalty for Dreslin's failure to comply with the payment terms of the PPA, *id*. § 4007(b), Dreslin, as the owner, is not entitled to any statutory penalties, as she alleges in her counterclaim. *See* Counterclaim ¶ 81 ("Under 9 V.S.A. § 4007(b), Dreslin is entitled to a penalty of 1% per month in statutory interest."). Further, contrary to Dreslin's argument, the PPA does not impose any requirements on Lacillade's. *See* Opposition at 3 ("Lacillade's failed to comply with Prompt Payment Act requirements, which entitles Dreslin to assert the claim as a counterclaim.").

In her Opposition, Dreslin effectively concedes that she cannot assert an "independent cause of action" under the language of the PPA. *Id*. at 2. Moreover, the Court rejects her suggestion that the PPA's provision for awarding reasonable attorneys' fees to the overall "substantially prevailing party" in a matter gives rise to a cause of action that can be asserted by an owner as a counterclaim. *See* 9 V.S.A. § 4007(c); *see also Nystrom v. Hafford*, 2012 VT 60, ¶ 19, 192 Vt. 300 (where common core of facts supports both Act claims and non-Act claims, party that substantially prevails overall, if any, shall be awarded fees and expenses). Rather, such an award would be part of the resolution of Lacillade's claim under the PPA, not a cause of action belonging to Dreslin.

Because the Prompt Payment Act does not provide owners with a separate cause of action, Lacillade's motion to dismiss this counterclaim is granted.

Order

For the foregoing reasons, Plaintiff's Partial Motion to Dismiss Defendants' negligence and Prompt Pay Act (Mot. #2) are GRANTED.

The parties shall file their proposed stipulated ADR Scheduling Order within 14 days of the date of this Order.

Electronically signed on August 11, 2025 at 10:18 AM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge

5